[No. 734.]

## THE STATE OF NEVADA EX REL. R. L. CHASE, RELATOR, *v.* F. A. ROGERS, RESPONDENT.

ENACTING CLAUSE, SECTION 23, ART. IV, OF THE CONSTITUTION, CONSTRUED. — The provision of Section 23, Art. IV, of the Constitution, that the enacting clause of every law shall be as follows: "The People of the State of Nevada represented in Senate and Assembly, do enact as follows," is mandatory.

IDEM.—The omission of the words "Senate and" from the enacting clause of an act of the legislature, renders the act unconstitutional and void.

IDEM.—The above provision of the Constitution is an imperative mandate of the people in their sovereign capacity, to the legislature, requiring that all laws, to be binding upon them, shall upon their face express the authority by which they were enacted, and an act without such authority appearing upon its face is not a law.

EVIDENCE OF THE EXISTENCE OF A LAW.—This Court will not look beyond the enrolled bill in the office of the secretary of state, in order to ascertain the terms of a law.

APPLICATION for writ of mandamus before the Supreme Court.

The facts are stated in the opinion.

*Thomas Wren,* for Relator.

I. The act entitled "An act to define and establish the boundary lines of Eureka County," embraces but one subject and matter properly connected therewith. One object of the act was to "establish the boundaries of Eureka County," and it does not make any difference whether that was the principal object or not; it might properly embrace all or any other matter resulting from the establishment of the

boundary, or properly connected therewith. (*Municipality No. 3* v. *Michoud*, 6 La. Ann. 607; *Bowman et al.* v. *Cockrill*, 6 Kan. 334, 335; *Washington* v. *Page*, 4 Cal. 388; *Ex parte Newman*, 9 Cal. 523; *Pierpont* v. *Crouch*, 10 Cal. 315; *Brewster* v. *City of Syracuse*, 19 N. Y. 117.)

II. Section 23 of Article IV of the Constitution was adopted merely for the purpose of producing uniformity and precision in the enacting clause of bills, and is directory. It should be construed liberally, and not rigorously, for the purpose of upholding, and not overthrowing statutes for trivial errors and slight omissions.

*Robert M. Clarke and H. C. Street*, for Respondent.

I. The provisions of Sections 17 and 23, Article IV, of the Constitution, are mandatory, and not directory merely. They are the paramount law, which it is the duty of the court peremptorily to enforce. (*State* v. *Silver*, 9 Nev. 227; *State* v. *Miller*, 45 Mo. 495; *Durkee* v. *Janesville*, 26 Wis. 697; *People* v. *O'Brien*, 38 N. Y. 193; *People* v. *McConvill*, 35 N. Y. 449; *Supervisors* v. *Heenan*, 2 Minn. 330; *Mewherter* v. *Price*, 11 Ind. 201; *Foley* v. *State*, 9 Ind. 363; *State* v. *Kinsella*, 14 Minn. 524; *Chiles & Thomas* v. *Monroe*, 4 Ky. 75; Cooley's Const. Lim. 82, 150, 78, 79, 130-1.)

II. The act in question embraces more than one subject, and the subject is not expressed in the title. It is, therefore, in conflict with Section 17, Article IV, of the Constitution, and is void.

III. The act in question has no enacting clause as required by Section 23, Article IV, of the Constitution, and is for this reason invalid. (Cushing's Law and Practice of Legislative Bodies, 819, 820, Secs. 2101, 2102; Cooley's Const. Limitations, 130, 131; 1 Washington Ter. R. 135.)

By the Court, HAWLEY, C. J.:

This is an application for a writ of mandamus to compel the respondent, the county recorder of Elko County, to transcribe and deliver to relator, the county recorder of Eureka County, certain records pursuant to the provisions

of section 2 of the act entitled "An act to define and establish the boundary lines of Eureka County." (Stat. 1875, 66.)

Respondent claims that said act is unconstitutional and void. First, because it embraces more than one subject and because the subject of said act is not expressed in the title, as required by Section 17, Article IV, of the Constitution, which provides that: "Each law enacted by the legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title." Second, because said act has no enacting clause as required by Section 23, Article IV, of the Constitution, which provides that: "The enacting clause of every law shall be as follows: 'The People of the State of Nevada, represented in senate and assembly, do enact as follows,' and no law shall be enacted except by bill."

The enacting clause of the act in question leaves out the words "senate and" and reads: "The People of the State of Nevada, represented in assembly, do enact as follows."

The first question to be determined is whether said provisions are directory or mandatory in their character.

In California, Ohio, Maryland and Mississippi, similar provisions of the Constitution have been held to be directory only. (*Washington* v. *Page*, 4 Cal. 388; *Pierpont* v. *Crouch*, 10 Cal. 315; *Pim* v. *Nicholson*, 6 Ohio State, 177; *McPherson* v. *Leonard*, 29 Md. 386; *Swann* v. *Buck*, 40 Miss. 292.) But in Alabama, Georgia, Indiana, Iowa, Kentucky, Louisiana, Michigan, Minnesota, Missouri, New Jersey, New York, Texas and Wisconsin, similar provisions have been recognized and enforced as mandatory by the courts, and in our judgment the whole current and weight of authority, as well as reason, is in accord with this view. The argument urged by relator, that we should follow the construction given by the Supreme Court of California prior to the adoption of our Constitution, has no force in its application to this case, from the fact that it cannot be said that we borrowed these provisions exclusively from the Constitution of the State of California, when similar provisions are to be found in the constitutions of other States, where

the courts had held them to be mandatory. This Court has recognized and enforced section 17 as being mandatory (*State* v. *Silver*, 9 Nev. 230), and we see no valid reason for adopting a different rule in this case.

Judge Cooley, in his work on Constitutional Limitations, after mentioning the fact that many of the provisions of the statutes of the several States have been held to be directory, says: "But courts tread upon very dangerous ground when they venture to apply the rules which distinguish directory and mandatory statutes to the provisions of a constitution. Constitutions do not usually undertake to prescribe mere rules of proceeding, except when such rules are looked upon as essential to the thing to be done; and they must then be regarded in the light of limitations upon the power to be exercised. It is the province of an instrument of this solemn and permanent character to establish those fundamental maxims, and fix those unvarying rules, by which all departments of the government must at all times shape their conduct; and if it descends to prescribing mere rules of order in unessential matters, it is lowering the proper dignity of such an instrument and usurping the proper province of ordinary legislation. We are not, therefore, to expect to find in a constitution provisions which the people in adopting it have not regarded as of high importance and worthy to be embraced in an instrument which, for a time at least, is to control alike the government and the governed, and to form a standard by which is to be measured the power which can be exercised as well by the delegate as by the sovereign people themselves. If directions are given respecting times or modes of proceeding in which a power should be exercised, there is at least a strong presumption that the people designed it should be exercised in that time and mode only; and we impute to the people a want of due appreciation of the purpose and proper province of such an instrument when we infer that such directions are given to any other end, especially when, as has been already said, it is but fair to presume that the people in their constitution have expressed themselves in careful and meas-

ured terms, corresponding with the immense importance of the powers delegated, and with a view to leave as little as possible to implication. There are some cases, however, where the doctrine of directory statutes has been applied to constitutional provisions; but they are at variance with the weight of authority upon the precise points considered, and we do not think, therefore, we should be warranted in saying that the judicial decisions, as they now stand, sanction the application" (p. 78).

The following authorities fully sustain the position, which we believe to be correct, that these and similar provisions of the Constitution are mandatory: *Tuskaloosa Bridge Co.* v. *Olmstead*, 41 Ala. 9; *Weaver* v. *Lapsley*, 43 Ala. 224; *Prothro* v. *Orr*, 12 Geo. 36; *Wolcott* v. *Wigton*, 7 Ind. 44; *Rice* v. *The State*, 7 Ind. 332; *The Indiana Central Railway Co.* v. *Potts*, 7 Ind. 682; *Walker* v. *Caldwell*, 4 La. Ann. 297; *The Board of Supervisors of Ramsey Co.* v. *Heenan*, 2 Minn. 331; *State* v. *Miller*, 45 Mo. 496; *The People* v. *Lawrence*, 36 Barb. 178; *The People ex rel. McConvill* v. *Hills*, 35 N. Y. 449; *Cannon* v. *Hemphill et al.*, 7 Tex. 185; *Antonio* v. *Gould*, 34 Tex. 49; *Durkee* v. *City of Janesville*, 26 Wis. 700; *Seat of Government determined*, 1 Wash. Ter. 136.

In *Tuskaloosa Bridge Co.* v. *Olmstead*, the court had under consideration the constitutional provision of Alabama that "No law * * shall be * * amended by reference only to its title, * * but the law * * amended shall itself be set forth at full length." It was there argued by eminent counsel that the provision was only directory, and was intended only as mere rules for the legislature, and that courts ought to "deviate a little from the received sense and literal meaning of the words, and interpret the instrument in accordance with what may appear to have been its reason and spirit." Such is substantially the argument advanced by relator's counsel here, and the decision is for that reason specially applicable to this case. Walker, C. J., in delivering the opinion of the court, said: "We have given careful attention to the argument that the clause of the Constitution under consideration is a mere rule of legis-

lative proceeding, and does not render void a law not con-
formable to it.   An anxious desire to allow effect to the
will of the legislature, and to avoid a seemingly harsh visit-
ation of a rule the usefulness of which is hardly propor-
tionate to its inconvenience, induced us to prolong our ad-
visement on the case, with the hope of discovering reason
or authority which would lead us to the support of that
argument.   But it still seems to us that the clause raises a
question of legislative power, and is not a mere rule for the
government of the general assembly in its proceedings.
The prohibition is emphatic, that no law shall be revised
or amended except in the mode specified.   This is a com-
mand, not specially or professedly addressed to the legis-
lature alone.   It is as general and comprehensive as any
prohibition in the Constitution.   It is binding upon the
executive, who approves or disapproves bills, and upon the
judiciary, who declare the law, as well as upon the legis-
lature.   What warrant can there be, then, for the position
that it is simply a rule for the guidance of the legislature?
When the Constitution says no law shall be amended, save
in a specified manner, can the legislature say a law may be
and shall be amended in a different manner?   The case is,
to our minds, a plain one of irreconcilable conflict between
the paramount law of the Constitution and the enactment
of the legislature.   When such a conflict is clearly presented
to the judicial mind, the Constitution must prevail."   We
approve of the reasoning and conclusion of the learned
chief justice who delivered the opinion of the court.   The
reasoning of that case was afterwards adopted and applied
in *Weaver* v. *Lapsley,* where the court had under considera-
tion the provision of the Constitution that declares:  "Each
law shall contain but one subject, which shall be clearly ex-
pressed in its title," and led the court "undoubtingly to the
conclusion that the said section of the Constitution is im-
perative and mandatory, and a law contravening its provis-
ions is null and void."   If one or more of the positive pro-
visions of the Constitution may be disregarded as being
directory, why not all?   And if all, it certainly requires no

argument to show what the result would be. The Constitution, which is the paramount law, would soon be looked upon and treated by the legislature as devoid of all moral obligations; without any binding force or effect; a mere "rope of sand," to be held together or pulled to pieces at its will and pleasure. We think the provisions under consideration must be treated as mandatory, and agree with Judge Cooley that "there are few evils which can be inflicted by a strict adherence to the law so great as that which is done by the habitual disregard, by any department of the government, of a plain requirement of that instrument from which it derives its authority, and which ought, therefore, to be scrupulously observed and obeyed."

These provisions being mandatory in their character, it becomes our duty to consider whether they have been complied with.

Has this act an enacting clause, as required by the Constitution?

Cushing, in his work on Law and Practice of Legislative Assemblies (819, Sec. 2102), says: "The Constitutions of all the States in the Union, except those of Pennsylvania, Delaware, Virginia, North Carolina, South Carolina, Georgia, Louisiana, Kentucky, and Arkansas, contain a statement, under the name of the enacting style, of the words with which every act of legislation in those States, respectively, must be introduced, sometimes with and sometimes without the use of negative words, or other equivalent language. The Constitutions of the States above named, and of the United States, contain no statement of an enacting clause. Under those Constitutions, therefore, an enacting clause, though equally requisite to the validity of a law, must depend mainly upon custom. The foregoing considerations seem to call for three remarks:

"I. Where enacting words are prescribed, nothing can be a law which is not introduced by those very words, even though others which are equivalent are at the same time used.

"II. Where the enacting words are not prescribed by a

constitutional provision, the enacting authority must, notwithstanding, be stated; and any words which do this to a common understanding are doubtless sufficient; or the words may be prescribed by rule. In this respect much must depend upon usage.

"III. Whether, where enacting words are prescribed in a resolve or joint resolution, can such resolution have the force of law without the use of those very words, is a question which depends upon each individual Constitution, and which we are not called upon at present to settle."

The question asked falls under the first subdivision discussed by Cushing.

In *McPherson* v. *Leonard, supra,* the majority of the justices of the court held that the words "by the General Assembly of Maryland," which were omitted from the enacting clause, were not of the essence and substance of a law, and that their use was directory only, and upon this ground refused to declare the act void. The statement that the words omitted are not of the essence and substance of a law is clearly erroneous, and the opinion is fallacious. How can it be said that these words are not of the essence and substance of a law when the Constitution declares that the enacting clause of every law shall contain them? Two justices dissented from the opinion of the court and held the provision of the Constitution to be mandatory. Justice Stewart, in his dissenting opinion, said, in alluding to the Constitution: "That instrument having expressly declared, in the twenty-ninth section of the third article, that 'The style of all laws of the State shall be, "Be it enacted by the general assembly of Maryland,"' it is incumbent on the law-making department to pursue that mode. If a positive requirement of this character * * * can be disregarded, so may others of a different character, and where will the limit be affixed or practical discrimination made as to what parts of the organic law of the State are to be held as advisory, directory, or mandatory? Disregard of the requirements of the Constitution, although, perchance, in matters of mere form and style, in any part, in law, may es-

tablish dangerous examples, and should, in all proper ways, be discountenanced. The safer policy, I think, is to follow its plain mandates in matters that may appear not to be material, in order that the more substantial parts may be duly respected. If those who are delegated with the trust of making the laws, from the purest motives improvidently omit the observances of the Constitution under any circumstances, such oversight may be referred to in the future by others, with far different views, as precedents, and for the purpose of abuse. A higher responsibility is imposed upon those selected by the people for the discharge of legislative duty, and a greater obligation is demanded of them to exemplify, by their practice, a careful compliance with the Constitution. By a vigilant observance of its commands, the more reasonable is the probability that the best order will be secured. It is unnecessary to illustrate, by any argument, the soundness of this general consideration, which, I am sure, all will admit to be unquestionable, that a strict conformity is an axiom in the science of government. I certainly entertain such profound conviction of its truth, that I do not feel authorized to give my approval to this act as a valid law, but, on the contrary, am constrained to say, that the omission of the style required by the Constitution is fatal to its validity." (29 Md. 392.)

In Washington Territory, an act was passed without an enacting clause, to locate the seat of government, and although the "organic act" passed by Congress creating the Territory did not prescribe or require any enacting clause to be used in the passage of any law, the Supreme Court held the act to be unconstitutional and void for the want of an enacting clause. After quoting from Cushing, the court say: "The staring fact that the constitutions of so many States, made and perfected by the wisdom of their greatest legal lights, contain a statement of an enacting clause in which the power of the enacting authority is incorporated, is, to our minds, a strong and powerful argument of its necessity. It is fortified and strengthened by the further

fact that Congress, and the other States, to say nothing of the English Parliament, have, by almost unbroken custom and usage, prefaced all their laws with some set form of words in which is contained the enacting authority." (1 Wash. Ter. 143.)

Wyche, J., dissented from the opinion of the court, and in his dissenting opinion said: "The constitutions of nearly all, if not every State, prescribe some form for an enacting style, that is to say, some description of the law-making power. In such States it is conceded the prescribed forms must be followed, perhaps literally, at all events substantially." He refers to *Washington* v. *Page* (4 Cal. 388), where a provision of the Constitution was declared to be directory, and says it "is unsatisfactory and is not cited with approbation." He bases his dissent upon the ground that the "organic act" did not require an enacting clause, and that if the legislature was compelled to use any "enacting style from the force of custom, that custom must be unbroken," and shows that no such custom existed in the Territory. In *Swann* v. *Buck, supra,* the court discussed questions which belong to the third subdivision mentioned by Cushing. As an authority it has no application to the facts of this case, except in so far as the court held the law to be directory, a position which, in our judgment, for reasons we have already stated, is wholly untenable. The Constitution of Mississippi provides that the style of laws shall be: "Be it enacted by the Legislature of the State of Mississippi." The legislature passed a joint resolution in the following words: "Resolved by the Legislature of the State of Mississippi." The court, after admitting that it is necessary that every law should show on its face the authority by which it is adopted, held that the word "resolved" was as potent to declare the legislative will as the word "enacted," and further sustained the validity of the law upon the ground that as a joint resolution it had the force and effect of law.

In this case it is not contended that any equivalent words for those missing have been used, and there is no pretense

that the act has the force or effect of law as a resolution. It is not necessary for us to hold, as laid down by Cushing, that nothing can be a law which is not introduced by the very words prescribed by the Constitution, for here there has not been a substantial compliance with the plain provision of that instrument. It is true, as was argued by relator's counsel, that all political power is inherent in the people. It is "the people" that enact all laws; but the laws, under the provisions of our Constitution, can only be enacted by the people when "represented in Senate and Assembly." These words, expressive of the authority which passed the law, are as necessary as the words, "the people," or any other words of the enacting clause. On its face the act purports to have been enacted by the people when represented in the assembly only. Without the concurrence of the senate the people have no power to enact any law. Every person at all familiar with the practice of legislative bodies is aware that one of the most common methods adopted to kill a bill and prevent its becoming a law, is for a member to move to strike out the enacting clause. If such motion is carried, the bill is lost. Can it be seriously contended that such a bill, with its head cut off, could thereafter by any legislative action become a law? Certainly not. The certificates of the proper officers of the senate and assembly, that such an act was passed in their respective houses, do not, and could not, impart vitality to any act which, upon its face, failed to express the authority by which it was enacted.

It was suggested by counsel for relator in his oral argument that when the bill was presented to the legislature, the enacting clause contained the identical words required by the Constitution, and that, after its passage, through the mistake of the enrolling clerk, the words "senate and" were omitted. We decided in *The State ex rel. George* v. *Swift, ante,* that we could not look beyond the enrolled bill in the office of the secretary of state in order to ascertain the terms of a law. The correctness of that decision has not been questioned, and under the rules therein established we

must take the act as we find it certified to by the officers whose duty it is to certify to the correctness of all laws that have been enacted.   Our Constitution expressly provides that the enacting clause *of every law* shall be "The people of the State of Nevada, represented in senate and assembly, do enact as follows."   This language is susceptible of but one interpretation.   There is no doubtful meaning as to the intention.   It is, in our judgment, an imperative mandate of the people in their sovereign capacity to the legislature, requiring that all laws to be binding upon them shall, upon their face, express the authority by which they were enacted, and as this act comes to us without such authority appearing upon its face, it is *not a law.*

The conclusion here arrived at renders it unnecessary to decide whether the act in question is subject to the further objections, urged by respondent's counsel, that the subject of the law is not expressed in the title, and upon that point we express no opinion.

The writ of mandamus is denied.

EARLL, J., did not participate in the foregoing decision.