SMITH, RECEIVER, v. JENNINGS, TREASURER.

1. JOINT RESOLUTION—JUDICIAL QUESTION—SENATE.—Whether the Senate had the right to *reconsider* a vote of that body on the passage of a joint resolution over the Governor's veto, is not a judicial question, but one governed by the rules of the body.

2. IBID.—HOUSE OF REPRESENTATIVES—CONSTITUTION.—Under sec. 23, art. IV., of Constitution, two-thirds of the members of the House of Representatives present in a lawfully constituted session are sufficient to pass a joint resolution over the veto of the Governor.

3. IBID.—IBID.—IBID.—SENATE—GOVERNOR.—Under sec. 23, art. IV., the Senate and House of Representatives are continuing entities, and the Governor properly returned a joint resolution vetoed by him to the "House" in which it originated upon reassembling at next session, although an election had intervened and new members had been elected to and taken their seats in such "House," and it had authority to consider the resolution.

4. IBID.—CONSTITUTION.—Although art. III., sec. 16, of Constitution, requiring all laws to be styled, "Be it enacted, &c.," is mandatory, still a joint resolution enacted by the words, "Be it resolved, &c.," is a sufficient compliance with such requirement. Requisites of a joint resolution stated.

5. IBID.—IBID.—CONTRACTS.—A joint resolution directing the State Treasurer to write off his books as obligations of the State certain past due bonds not paid, is not a law impairing the obligation of a contract, in the sense of the State and Federal Constitutions, but a simple instruction to the State treasurer in the matter of book-keeping.

Petition for injunction in the original jurisdiction of this Court by H. A. M. Smith, receiver of the president, directors and company of the State Bank, against R. H. Jennings, State treasurer.

*Messrs. McCradys & Bacot, Julian Mitchell, Jr.,* and *Smythe, Lee & Frost,* for petitioner, cite: *The resolution impairs the obligation of contract:* 3 Ency., 1 ed., 748; 15 Ency., 2 ed., 1033, 1040, 1047-8, 1050; Cool. Con. Lim., 6 ed., 329-30; 4 S. C., 430; 12 S. C., 200; 4 Pet., 514; 96 U. S., 432; 102 U. S., 672; 12 Rich. Eq., 498; 15 How., 304;

1 S. C., 63; 15 How., 304; 15 Rich. L., 84; 21 S. C., 414; 2 Pet., 627; 4 Wheat., 122; 6 How., 301; 96 U. S., 595; 135 U. S., 662; 12 Wheat., 213. *As to the enacting words:* 10 Nev., 250; 73 Minn., 203. *It was not passed by requisite vote:* Con. 1895, art. IV., sec. 23; Con. 1868, sec. 7, art. IX., art. XVI.; 4 S. C., 430; 12 S. C., 200; Con. 1895, sec. 11, art. III.

*Attorney General U. X. Gunter, Jr.,* contra, cites: *Requisites of joint resolution:* Art. III., sec. 18; art. IV., secs. 17, 23. *As to compliance with constitutional requirements:* 23 Ency., 163; End. on Int. of Statutes, secs. 536, 234; Suth. on Stat. Con., secs. 60-65; 40 Miss., 293; 16 Ind., 49; 52 Mo., 426; 86 N. W., 956. *The two-thirds of the House necessary to pass resolution over veto means two-thirds of quorum:* Art. III., sec. 2; art. XV., sec. 1; art. XVI., sec. 1; 4 S. C., 431; 12 S. C., 200.

September 10, 1903.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   This is an application in the original jurisdiction of this Court for an order restraining the State treasurer from acting pursuant to a joint resolution of the General Assembly, which requires the State treasurer "to write off of the books in his office and no longer carry on the books as a debt of the State" certain bonds entered on the books of the State treasurer as "Old bonds not fundable (act of 1896) Blue Ridge Railroad bonds, $37,000." The petitioner attacks the constitutionality of said joint resolution upon several grounds, issue thereof being made by demurrer of respondent to the petition.   We will not undertake to set out in detail the allegations of the petition.   It is sufficient to say that the bonds referred to are the "lost bonds" which the receiver of "The State Bank." unsuccessfully sought to have funded on the case of *Samuel Lord, receiver,* v. *W. T. C. Bates, State treasurer,* 48 S. C., 95, and that the petitioner, H. A. M. Smith, as receiver, suc-

ceeds to all the rights of said bank with respect to said lost bonds.

The joint resolution is as follows:

"*A Joint Resolution to authorize and require the State treasurer to write off of the books in his office certain bonds entered on said books as 'Old Bonds not Fundable (Act of 1896), Blue Ridge Railroad Bonds, $37,000.'*

"*Be it Resolved* by the General Assembly of the State of South Carolina:

"Section 1. That whereas by an act of the legislature of 1896, the treasurer of this State is forbidden to pay, consolidate or fund any coupon bonds of the State after the expiration of twenty years from the date of maturity of such bonds, and certain bonds entered on the books of the State treasurer as 'Old bonds not fundable (act of 1896), Blue Ridge Railroad bonds, $37,000,' are still carried on the books of the State treasurer. Therefore, be it *Resolved:* That the State treasurer be, and is hereby, authorized and required to write said bonds off of the books in his office, and no longer carry said bonds on the books *as a debt of the State.*" Stat. 1903, 24 Stat., p. 266.

It is claimed that this joint resolution has not the force of law, and violates the following constitutional provisions:

1. Sec. 23, of article IV., of the Constitution of the State of South Carolina, which requires (a) *two-thirds of each house* (*i. e.*, two-thirds of *all the members, not* of a *constitutional quorum* of each house,) to pass a bill or joint resolution that has been unapproved and unsigned by the governor; and (b) a *re*-turn to and *re*-consideration by *the same, not* a *new,* General Assembly of such bill or joint resolution.

2. Sec. 16, of article III., of the Constitution of the State of South Carolina, which provides that "*The style of all laws shall be: 'Be it* ENACTED *by the General Assembly* of the State of South Carolina.'*" And

3. Sec. 8, of art. I., of the Constitution of the State of South Carolina, which provides that "*No * * * law impairing the obligation of contracts * * * shall be passed * * *;"

*and also* the first clause of section 10, of article I., of the Constitution of the United States of America, which provides that *"No State shall * * * pass any * * * law impairing the obligation of contracts * * *"*

1. The question presented under sec. 23, art. IV., of the Constitution, is whether the language, "two-thirds of that house," means two-thirds of the total membership of the Senate, which consists of forty-one members, and two-thirds of the total membership of the House of Representatives, which consists of one hundred and twenty-four members, or means two-thirds of the members of each of said bodies voting upon the question, a quorum being present. The joint resolution was passed by the General Assembly on February 22d, 1902, on which day the regular session of 1902 adjourned *sine die.* The joint resolution having been presented to the governor, and the General Assembly having by adjournment prevented its return within three days, the governor sent it unapproved and unsigned and with his objection to the Senate, where it originated, within two days after the meeting of the General Assembly which convened on Tuesday, the 13th day of January, 1903. On the 19th day of February, 1903, the Senate by a vote of twenty-five to eleven, out of a membership of forty-one, passed the joint resolution, the veto of his excellency the governor to the contrary notwithstanding; but immediately thereupon reconsidered its said action, and on February 20th, 1903, passed the joint resolution over the governor's veto by a vote of twenty-eight to thirteen. Thereupon the joint resolution, together with the governor's objection, the veto, was sent to the House of Representatives, which body on same day, February 20, 1903, by a vote of sixty to twenty-five, out of a total membership of one hundred and twenty-four, passed the joint resolution over the governor's veto.

Treating a vote upon the passage of the joint resolution over the governor's veto as upon the reconsideration of the original resolution, it is not a judicial question whether the Senate had the right to reconsider the vote upon such

reconsideration. That is merely a matter of parliamentary procedure which each body by special rule may, and usually does, regulate for itself. As a judicial question we accept the result as shown by the Senate Journal of February 20, 1903, and set forth in the petition, as one reached in accordance with the rules of the body. So that it appears that the Senate's action is unquestionable under either construction of the Constitution. Our further consideration of this question will, therefore, be confined to the action of the House of Representatives.

While the Constitution in art. III., sec. 3, declares that the House of Representatives shall consist of one hundred and twenty-four members, it also declares in sec. 4, art. III., that a majority of each house shall constitute a quorum to do business. A quorum, therefore, possesses the power of the whole body in all matters of business wherein the action of a larger proportion of the entire membership is not clearly and expressly required. So, ordinarily, when a quorum is present acting, the "House" is present acting in all its potentiality. When the Constitution speaks of "two-thirds of that house" as the vote required to pass a bill or joint resolution over the veto of the governor, it means two-thirds of the house as then legally constituted and acting upon the matter. Whenever the framers of the Constitution intended otherwise, the purpose was expressly declared, as in art XV., sec. 1, "a vote of two-thirds *of all members elected* shall be required for an impeachment," and in art. XVI., sec. 1, where in proposing amendments to the Constitution, "two-thirds of the members *elected* to each house" must agree thereto. Questions like this arose under the Constitution of 1868, and were decided in accordance with the view we take. *Morton, Bliss & Co.* v. *Comptroller General,* 4 S. C., 462; *Bond Cases,* 12 S. C., 285. See, also, Cooley's Constitutional Limitations, 5th ed., p. 170; *State* v. *McBride,* 4 Mo., 303, 29 Am. Dec., 636. As the house at the time of the passage of the joint resolution was lawfully constituted with eighty-five members present, and as sixty of these

voted for its passage, the vote was "two-thirds of that house," in the sense of sec. 23, of art. IV., of the Constitution.

With respect to the point made under sub-division (b) above, we do not think it tenable. Sec. 23, art. IV., requires that the governor shall return a bill or joint resolution, which he does not approve, with his objections, to the house in which it originated, which house shall proceed to reconsider it. "If after such _reconsideration_ two-thirds of that house shall agree to pass it, it shall be sent, together with the objections, to the other house, by which it shall be _reconsidered,_ and if approved by two-thirds of that house, it shall have the same effect as if it had been signed by the governor." The point is made that the General Assembly of 1903 was a new General Assembly, composed of the members elected in the general election in the fall of 1902, and that the Constitution contemplates a return of bill or joint resolution unapproved by the governor to the General Assembly which passed it, as that body alone can properly be said to reconsider the same. Such a construction would destroy the effect of the last provision in said section, as follows: "If a bill or joint resolution shall not be returned by the governor within three days after it shall have been presented to him, Sundays excepted, it shall have the same force and effect as if he had signed it, unless the General Assembly, by adjournment, prevent its return, in which case it shall have such force and effect, unless returned within two days after the _next meeting._" As the legislature adjourned _sine die_ on the day the joint resolution passed, the governor had the right to return the resolution not approved within two days after the next meeting of the General Assembly. In the sense of this provision, the Senate and House of Representatives, as composing the General Assembly, are continuing bodies, and as such entities are not affected by the changes made in the particular individuals who may be members thereof. It is the "House" which is to reconsider, not the particular members who participated in the original consider-

ation. Furthermore, if petitioner's construction be correct in this regard, then the governor did not return the joint resolution, as required by the Constitution, and in such event it would have the same force and effect as if he had signed it, and our consideration of this branch of the case would be useless.

2. Art. III., sec. 16, of the Constitution declares: "The style of all laws shall be, 'Be it enacted by the General Assembly of the State of South Carolina.'" It is contended by petitioners that the use of the word "resolved" instead of the word "enacted" in the joint resolution, renders it void. We are relieved of any discussion whether this provision of the Constitution is mandatory or merely directory by the declaration in sec. 29, art. I., of the Constitution, that "the provisions of the Constitution shall be taken, deemed and construed to be mandatory and prohibitory and not merely directory, except where expressly made directory or permissory by its own terms." There being nothing in the provision under discussion indicating that it is directory merely, we are bound to hold it as mandatory. Under Constitutions not containing a provision like the one just cited, there is a conflict among the authorities as to whether a provision like art. III., sec. 16, is mandatory or directory. The following cases hold such provisions to be merely directory: *McPherson* v. *Leonard,* 29 Md., 377; *City etc.* v. *Riley,* 52 Mo., 424, 14 Am. Rep., 427; *Swann* v. *Buck,* 40 Miss., 268. In the case last cited, the Court considered whether a joint resolution with enacting words, "Be it resolved, &c.," was void in view of a constitutional provision similar to ours, and held the joint resolution valid, using in part this language: "The word 'resolved' is as potent to declare the legislative will as the word 'enacted.' It is true, that a resolution may or may not take effect as law, depending upon the occasion and object of its use. It may be resorted to as a safe vehicle to convey the opinions or wishes of the legislature on any subject without prescribing any rule of conduct to be observed. But whenever a joint resolution

does undertake to lay down a rule of conduct for any portion of the people of the State, it becomes a law, and will take effect as such notwithstanding the use of the word 'resolved' in its style, instead of the word 'enacted.' The requirement of the Constitution is thereby substantially complied with and the will of the legislature sufficiently declared."

On the other hand, the following cases hold such a provision as we have under consideration to be mandatory: *May* v. *Rice,* 91 Ind., 546; *Burritt* v. *Commissioners,* 120 Ill., 322, 11 N. E. Rep., 184; *State* v. *Patterson,* 98 N. C., 660, 4 S. E. Rep., 350; *State* v. *Rogers,* 10 Nev., 250, 21 Am. Rep., 738; *Syoburg* v. *Security etc. Association,* 73 Minn., 203; *People* v. *Dettenthaler* (Mich.), 77 N. W. Rep., 450, 72 Am. St. Rep., 619. In all these cases, however, there was an absence of any enacting clause, except in the case of *State* v. *Rogers, supra.* In this last mentioned case it appears that the Nevada Constitution provided that: "The enacting clause of every law shall be as follows: 'The people of the State of Nevada represented in Senate and Assembly do enact as follows,' and no law shall be enacted except by bill." The enacting clause of the act in question in that case read: "The people of the State of Nevada represented in Assembly do enact as follows:" omitting the words "Senate and." This was a vital omission, inasmuch as in Nevada the two branches of the legislature were the Senate and Assembly. The enacting clause, therefore, failed to show that the bill or statute was by the authority of *both* branches of the legislature. So that the Nevada case could not be cited to sustain the view that a literal compliance with the mandatory provision of the Constitution was essential. A failure to substantially comply with a mandatory provision is as if no compliance at all was made, and in this view the Nevada case is in line on principle with the other cases cited, which hold the absence of any enacting clause in a statute as a fatal defect. In the *Seat of Government Case,* 1 Wash. Ter., 115, the Court held that an act of the legislature without an enacting clause was void, although there was no provision in the

original act [Constitution] of the Territory prescribing or requiring any enacting clause.

We hold, while the constitutional provision as to form of enacting clause is mandatory, that a substantial compliance with the mandate will be sufficient. We cannot bring our mind to hold that an absolutely literal compliance with the form prescribed is essential to valid legislation. There must be, however, an enacting clause in appropriate words importing the same as the phraseology prescribed. We are not without authority in this State for such view. In the case of *State* v. *Mason,* 54 S. C., 241, the Court sustained an indictment which concluded with the words, "against the peace and dignity of the same State aforesaid," instead of the words "against the peace and dignity of the State," as required by the mandatory provision in art. V., sec. 31, of the present Constitution, following *State* v. *Robinson,* 27 S. C., 618, which sustained an indictment concluding in the words of the indictment in State *v.* Mason, as a substantial compliance with art. IV., sec. 31, of the Constitution of 1868, in terms the same as in art. V., .sec. 31, of the present Constitution. Likewise, in the case of *State* v. *Hill,* 19 S. C., 435, the Court held valid a venire commencing "State of South Carolina, County of Spartanburg. To the Sheriff of Spartanburg County," as a sufficient compliance with the constitutional requirement (art. IV., sec. 31, Constitution 1868), that "all writs and processes shall run in the name of the State of South Carolina." These cases establish the principle that a literal compliance with certain mandatory formulas is not exacted, but that a substantial compliance is sufficient.

Legislation by joint resolution has long been in practice in this country, in Congress and in many of the States of the Union. Joint resolutions, while not always and absolutely confined thereto, are employed in legislation of an administrative kind, in matters of a local or temporary nature, as distinguished from matters of a general or permanent nature, and in this State are most usually employed in

directing an officer to do or not to do a particular thing. Such resolutions, however, like ordinary bills, must, in order to have the force of law, (1) contain a title relating to but one subject, which shall be expressed therein; (2) must have an enacting clause showing the authority by which they are promulgated; (3) must be passed in both branches of the legislature, having been read three times on three several days in each house; (4) must be signed by the president of the Senate and speaker of the House of Representatives; (5) must have the great seal of the State attached thereto; (6) must be approved and signed by the governor, or passed over his veto by a two-thirds vote of each house. All these constitutional requirements, it is admitted, have been complied with in the present case. But the word "resolved" was used instead of the word "enacted," in the enacting clause or style. In all our investigation, which has been somewhat extended, we have found no case, and none has been cited, which declares a joint resolution void on such a ground. It is true, Mr. Cushing, in his Law and Practice of Legislative Assemblies, 1819, sec. 2102, says:

"1. Where enacting words are prescribed, nothing can be a law which is not introduced by those very words, even though others which are equivalent are at the same time used.

"2. Where the enacting words are not prescribed by a constitutional provision, the enacting authority must notwithstanding be stated; and any words which do this to a common understanding are doubtless sufficient, or the words may be prescribed by rule. In this respect much must depend upon usage.

"3. Whether where enacting words are prescribed in a resolve or joint resolution can such resolution have the force of law without the use of those very words, is a question which depends upon each individual Constitution, and which we are not called upon at present to settle."

It will be observed that while the broad statement in the first paragraph above seems to be against the view we take,

the particular point under consideration in this sense is expressly left open, in so far as Mr. Cushing is an authority, in the third paragraph.

Legislation by joint resolution came into vogue in this State about the time of the adoption of the Constitution of 1868, which, unlike the Constitution of 1790, authorized legislation by joint resolution. From that time up to the adoption of the Constitution of 1895, joint resolutions were passed at every session of the legislature, and the enacting clause uniformly was, "Be it resolved, &c.," instead of "Be it enacted, &c.," notwithstanding the Constitution of 1868, art. II., sec. 19, declared, "The style of all laws *shall* be, 'Be it enacted by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authority of the same.'" Under the authorities above cited, fortified by the reasoning of Judge Cooley in his Constitutional Limitations, 5th ed., p. 92, *78, such provision in the Constitution of 1868 should be deemed mandatory, yet in all the years that Constitution was of force, no department of government questioned the validity of a joint resolution because "resolved" was used instead of "enacted" in the enacting or resolving clause. After the adoption of the Constitution of 1895, the legislature, in the session of 1896, passed twenty-nine joint resolutions, twenty of which used "Be it enacted, &c.," and nine used "Be it resolved, &c." In the session of 1897, all the joint resolutions used "Be it enacted, &c." In the session of 1898, fifteen joint resolutions used "Be it enacted, &c.," and one used "Be it resolved." In the session of 1899, all joint resolutions ran, "Be it enacted, &c." In the session of 1900, eighteen joint resolutions used "Be it enacted, &c.," and one "Be it resolved, &c." In the session of 1902, one joint resolution said, "Be it enacted, &c.," and twenty said, "Be it resolved, &c.," and thirteen used these words: "Be it enacted [resolved], &c.;" and during the session of 1903, four joint resolutions contained the words, "Be it enacted, &c.," while sixteen contained the words, "Be it resolved, &c." Thus it

appears that the legislature since the Constitution of 1895 regarded "resolved" as an appropriate word to be used in the enacting clause of a joint resolution, and sanctioned its use as the equivalent of "enacted."   Such long continued usage and construction by a co-ordinate branch of the government is persuasive if not conclusive.   We quite agree with the Mississippi Court in the statement that "the word 'resolved' is as potent to declare the legislative will as the word 'enacted.' "   This must be true with respect to joint resolutions, wherein the use of the word "resolved" is particularly appropriate and customary, and when the Constitution, as does . ours, authorizes legislation by joint resolution.   We,. therefore, hold that this joint resolution is not unconstitutional and void on this ground.

3. Both Federal and State Constitutions forbid any law impairing the obligation of contracts.   Mr. Black, in his work on Constitutional Law, p. 524, states: "The obligation of a contract is that duty of performing the contract according to its terms and intent which the law recognizes and enforces."   "Any law which precludes a recovery for a breach of contract, or excuses one of the parties from performing it, or renders it invalid, or enlarges or abridges the intention of the parties, or postpones or accelerates the time of performance, or interposes such obstacles to its enforcement as practically to annul it, impairs its obligation and is void."   At page 538, the same author states: "There is a distinction between the obligation of a contract and the remedy for its inforcement.   Whatever pertains merely to the remedy may be changed or modified at the discretion of the legislature without impairing the obligation of the contract; provided, the remedy be not wholly taken away, nor so hampered or reduced in effectiveness as to render the contract practically incapable of enforcement."

The following extracts from the decisions of the U. S. Supreme Court will show how that Court interprets the provision under consideration: "The obligation of a contract consists in its binding force on the party who makes it.   This

depends on the laws in existence when it is made; these are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by the one party and the right acquired by the other. There can be no other standard by which to ascertain the extent of either, than that which the terms of the contract indicate, according to their settled legal meaning; when it becomes consummated, the law defines the duty and the right, compels one party to perform the thing contracted for, and gives the other a right to enforce the performance by the remedies then in force. If any subsequent law affect to diminish the duty or to impair the right, it necessarily bears on the obligation of the contract in favor of one party, to the injury of the other; hence any law, which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act on the remedy, is directly obnoxious to the provisions of the Constitution." *McCracken* v. *Hayward,* 2 How., 612. "The objection to a law, on the ground of its impairing the obligation of a contract, can never depend upon the extent of the change which the law effects in it. *Any deviation* from its terms, by postponing or accelerating the performance which it prescribes, imposing conditions not expressed in the contract, or dispensing with the performance of those which are, *however minute or apparently immaterial in their effect upon the contract of the parties,* impairs its obligation." *Green* v. *Biddle,* 8 Wheat., at page 84. "One of the tests that a contract has been impaired is, that its value has by legislation been diminished. It is not, by the Constitution, to be impaired *at all.* This is not a question of *degree* or *manner* or *cause,* but of encroaching *in any respect* on its obligation, dispensing with *any part* of its force." *Planters' Bank* v. *Sharpe,* 6 How., 301, at page 327. "The obligation of a contract includes *every thing* within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence. Without it, the contract, as such, in the view of the law, ceases to be, and

falls into the class of those 'imperfect obligations,' as they are termed, which depend for their fulfilment upon the will and conscience upon whom they rest. The ideas of right and remedy are inseparable. Want of right and want of remedy are the same thing. *1 Bac. Abr., tit. Actions in General, letter B."* Edwards v. Kearsey, 96 U. S., 595, at page 600. "The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced—by which the parties can be obliged to perform it. *Whatever legislation* lessens the efficacy of these means, impairs the obligation." *Louisiana* v. *New Orleans,* 102 U. S., 203, at pages 206-7.

Tested by the principles stated, the joint resolution does not impair the obligation of any contract. It does not amount to a denial or obstruction of any right accruing under the contract, nor does it in the slightest lessen the efficacy of any means provided by law for the enforcement of such right. The mere writing off of the books of the State treasurer the entry referred to in the joint resolution, and directing him no longer to carry such bonds on his books as a debt of the State, is a mere matter of book-keeping on the part of the State's officer which petitioner has no right to control. On February 25, 1896, the legislature passed an act providing: "That after the approval of this act, no coupon bond of this State payable to bearer, nor any coupon thereof, shall be consolidated, converted, funded or paid by the State treasurer after the expiration of twenty years from the date of maturity of such bonds," and this act is in no wise brought in question in these proceedings. Whatever duty devolves upon the State to pay or fund the said bonds, which matured in 1879, and have never been presented for payment or funding, and whatever right petitioner has in regard to such lost bonds, such duty and right cannot be affected by the manner in which the State treasurer is directed to keep his books.

The injunction prayed for is refused, the temporary re-

straining order heretofore granted is revoked, and the petition herein is dismissed.