569 S.E.2d 388

**STATE of South Carolina, Respondent,**

v.

**Robert H. CHARRON and Jeanne Charron, Appellants.**

No. 3539.

Court of Appeals of South Carolina.

Submitted June 3, 2002.

Decided July 29, 2002.

Rehearing Denied Sept. 18, 2002.

320

Robert P. Lusk, of Anderson, for appellants.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson and Assistant Attorney General Dean H. Secor, all of Columbia, for respondent.

HOWARD, J.

Robert and Jeanne Charron (collectively "the Charrons") were each indicted on three separate charges for willful failure to file South Carolina income tax returns. A bench trial was held, and the Charrons were found guilty on each of the charges. We affirm.

## FACTS/PROCEDURAL HISTORY

On October 15, 1996, the Charrons were indicted for willful failure to file tax returns in 1992, 1993, and 1994, in violation of South Carolina Code Annotated section 12–54–40.[1] The Charrons moved to quash the indictments. The trial court denied the motion. The Charrons waived their right to a jury trial, and a bench trial was held before the circuit court.

The trial court found the Charrons guilty on all three charges of willful failure to file a tax return, sentencing Mrs. Charron to four months imprisonment on each charge, to run consecutively, and Mr. Charron to one year on each charge, also to run consecutively. This appeal followed.

## DISCUSSION

### I. Dismissal of the Indictments

The Charrons contend the trial court erred in failing to dismiss the indictments against them because: (1) there is no constitutional authority to levy an income tax in South Carolina, (2) Act Number 201 does not contain an enacting clause, (3) Act Number 201 was enacted in violation of Article III, section 16 of the South Carolina Constitution, and (4) section 12–54–40 was repealed without a savings clause. We disagree.

---

1. This section was repealed in 1999 and replaced by South Carolina Code Annotated section 12–54–44 (2000).

## A. Constitutional Authority

The supreme legislative power of the State is vested in the General Assembly; the provisions of our State Constitution are not a grant but a limitation of legislative power, so that the General Assembly may enact any law not expressly, or by clear implication, prohibited by the State or Federal Constitution; a statute will, if possible, be construed so as to render it valid.

*Moseley v. Welch,* 209 S.C. 19, 26–27, 39 S.E.2d 133, 137 (1946). Because there is no state or federal constitutional provision prohibiting the South Carolina General Assembly from levying an income tax, we find no merit to the Charrons argument that section 12–54–40 is null and void due to a lack of constitutional authority.

## B. Enacting Clause

Section 12–54–40 was created by Act Number 201 of 1985. Act No. 201, 1985 S.C. Acts 1693–99. The Charrons argue that Act Number 201 violates Article III, section 16 of the South Carolina Constitution, which provides: "The style of all laws shall be: 'Be it enacted by the General Assembly of the State of South Carolina.' " S.C. Const. Art. III, § 17.

The Charrons assert that Article III, section 16 requires literal compliance. In support of this proposition they rely on *Smith v. Jennings,* 67 S.C. 324, 45 S.E. 821 (1903). *Jennings,* however, does not support the Charrons' position. The court in *Jennings* expressly stated:

We hold, while the constitutional provision as to form of enacting clause is mandatory, that a substantial compliance with the mandate will be sufficient. We cannot bring our mind to hold that an absolutely literal compliance with the form prescribed is essential to valid legislation.

*Id.* at 32, 45 S.E. at 824.

It is uncontested that Act Number 201 does not contain the exact language mandated by Article III, section 16. However, Act Number 201 does contain the following language: "It is hereby declared to be the intent of the General Assembly that the following sections shall constitute a part of the permanent laws of the State of South Carolina ...." Act No. 201, 1985 S.C. Acts 1633. This language clearly conveys the intent of

the General Assembly to enact the laws created by Act Number 201. Therefore, we find this provision substantially complies with the mandates of Article III, section 16.

## C. Violation of Article III, Section 17

The Charrons argue Act Number 201 violates Article III, section 17 of the South Carolina Constitution, which provides: "Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." S.C. Const. Art. III, 17.

"A legislative enactment will be declared unconstitutional only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the constitution." *Westvaco Corp. v. S.C. Dep't of Revenue*, 321 S.C. 59, 63, 467 S.E.2d 739, 741 (1995). Article III, section 17 should be liberally construed so as to uphold an act. *Id.* Article III, section 17 requires "that an act relate to but one subject, with the topics in the body of the act being kindred in nature and having a legitimate and natural association with the subject of the title," and that the title of an act convey "reasonable notice of the subject matter to the legislature and the public." *Hercules, Inc. v. S.C. Tax Comm'n*, 274 S.C. 137, 141, 262 S.E.2d 45, 47 (1980).

Act Number 201 is a General Appropriations Act and contains numerous provisions relating to the "ordinary expenses of State Government." Act No. 201, 1985 S.C. Acts 793. The enforcement of the filing of state income tax returns is reasonably and inherently related to the expenditure of tax money and, therefore, appropriate for inclusion in the General Appropriations Act. *See Caldwell v. McMillan*, 224 S.C. 150, 159, 77 S.E.2d 798, 802 (1953) ("[T]he title of an Act is not of necessity a full index of the contents and, therefore, need not go into detail of every expenditure provided in the act itself when the general subject of the Act is expressed in the title. The details, names, *methods or instrumentalities* with which the general purpose is to be accomplished, and are germane to the act, may be expressed in the body thereof without violating the provisions of the Constitution that provide every Act [must] relate to one subject which should be expressed in the title." (emphasis added)); *Hercules, Inc.*, 274 S.C. at 142, 262

S.E.2d at 48 (holding a statute passed as part of General Appropriations Act requiring notification to State Tax Commission of any IRS audit as a pre-condition to running of statute of limitations is reasonably and inherently related to collection of tax revenues, and therefore germane to General Appropriations Act, thereby meeting the requirements of Article III, section 17).

## D. Savings Clause

██ The Charrons contend the trial court erred in failing to dismiss the charges against them because section 12–54–40 was repealed without a savings clause.

██ A criminal defendant may not be convicted under a repealed statute when the repealing act does not contain a savings clause. *See State v. Rider,* 320 S.C. 533, 534, 466 S.E.2d 367, 368 (1996). However, our supreme court has indicated that a pending prosecution of a defendant may continue when a criminal statute is amended, but not repealed. *Pierce v. State,* 338 S.C. 139, 147, 526 S.E.2d 222, 226 (2000). Therefore, the crucial question before this Court is whether the Legislature repealed or amended section 12–54–40 by passing sections 12–54–43 and 12–54–44 as part of Act Number 114 of 1999. Act No. 114, 1999 S.C. Acts 1117–1189–94.

Act Number 114 contained amendments to Chapter 54 of Title 12. Section 12–54–40 was simply renumbered as section 12–54–44. However, the statutory language remained the same, and the penalties were not changed. The new statutory scheme placed civil penalties in section 12–54–43 and the unmodified criminal penalties in section 12–54–44. Act 114 also contained language repealing section 12–5–40, which occurred upon the signing of the Act into law by the Governor. No savings clause was included within the Act specifically addressing section 12–54–40, but the Act's preamble contained the following description: "An act ... to amend Article I, Chapter 54, Title 12, relating to the enforcement and collection of taxes, by adding sections 12–54–43 and 12–54–44 so as to describe separately the civil and criminal penalties, respectively, in that connection." Act No. 114, 1999 S.C. Acts 1179.

██ "The repeal and simultaneous reenactment of substantially the same statutory provision are to be construed,

not as an implied repeal of the original statute, but as an affirmance and continuation thereof." *S.C. Mental Health Comm'n v. May*, 226 S.C. 108, 116, 83 S.E.2d 713, 716 (1954). However, our supreme court has recognized that "where substantial doubt exists as to construction and interpretation of legislative action with respect to enactment and enforcement of tax statutes, the doubt must be resolved against the government." *Columbia Ry., Gas & Elec. Co. v. Carter*, 127 S.C. 473, 482, 121 S.E. 377, 380 (1924).

When the Legislature said "[the code sections at issue] are hereby repealed," it meant that these sections were abrogated, destroyed—no longer of force and effect. This is the usual and ordinary meaning of the simple language used. It is entirely to the point and free from all ambiguity. The Legislature had the right to destroy these sections, and it did so. And the minute it did so its agents (the tax commission and treasurer), lost all authority to act under them.

The argument that the Legislature did not intend this result, that it made a mistake, that it was poor policy, assumes a supervisory power in the court that it does not possess. The Legislature said so; therefore it so intended. If it made a mistake, the court cannot correct it.

*Id.* at 479, 121 S.E. at 380 (citations omitted).

This principle, regarding tax statutes, would be controlling, were it not for the clearly stated intention of the Legislature to the contrary. Sections 12-54-43 and 12-54-44 are unchanged from former section 12-54-40 in wording and enforcement. The preamble to Act 114 clearly states the intended action of renumbering the sections for the purpose of separating the civil and criminal enforcement provisions. Perhaps most convincing, the Legislature enacted section 12-54-30, which reads as follows:

The repeal or amendment of a code section or act does not release or extinguish any tax, interest, penalty, forfeiture, or liability incurred, unless the repealing section or act expressly so provides. The repealed or amended code section or act must be treated as remaining in force for the purpose of sustaining any proper action *or prosecution* for the

enforcement of the tax, interest, penalty, forfeiture, or liability.

S.C.Code Ann. § 12–54–30 (Supp.2001) (emphasis added). We conclude this language provides the clearest statement by the Legislature that the repeal of section 12–54–40 did not impair prosecution for the enforcement of the criminal liability of the Charrons under section 12–54–40. Indeed, as is plainly stated, section 12–54–40 *remained in force* for the purpose of enforcing the liability.

The Legislature did not decriminalize the offenses or change the substance of the offense. Act 114 simply reenacted section 12–54–40 in two additional, separate sections, which more clearly delineated the differences between civil and criminal penalties. For the above stated reasons, we conclude the Legislature intended for the indictment and pending prosecutions of defendants under the former section 12–54–40 to remain valid after the effective date of Act 114. The convictions of the Charrons under section 12–54–40 are valid. *See Pierce,* 338 S.C. at 139, 526 S.E.2d at 222.

## II. Procedural and Trial Errors

The Charrons argue various procedural and trial errors, as a result of which they contend their convictions should be reversed. These include the assertion that the trial court proceeded to trial without an arraignment, without publishing the indictments, or without obtaining Mrs. Charron's plea on the record. They also argue the trial judge did not inform the Charrons of their rights not to testify, which they argue was prejudicial because the Charrons were not exercising their own judgment, but were clearly controlled by their counsel.

These issues are not preserved for our review because they were not raised in the trial proceedings. *See State v. Pauling,* 322 S.C. 95, 100, 470 S.E.2d 106, 109 (1996) (stating that "[h]aving denied the trial judge an opportunity to cure any alleged error by failing to contemporaneously object ..., Appellant is procedurally barred from raising these issues for the first time on appeal"); *State v. Peay,* 321 S.C. 405, 413, 468 S.E.2d 669, 674 (Ct.App.1996) (finding a contemporaneous objection and ruling at trial are required to preserve an error for review); *see also State v. Ariail,* 311 S.C. 35, 37, 426 S.E.2d 751, 753 (1993) (stating that by proceeding to trial,

defendant waived any objection regarding sufficiency of court's inquiry regarding waiver of arraignment).

## III. Judicial Prejudice

 The Charrons assert the trial judge became "prosecutor and inquisitor" and demonstrated such a degree of bias as to totally destroy any appearance of impartially. Again, this issue is not properly before us because the Charrons did not raise the issue of the trial judge's partiality at any point during the trial. *See Butler v. Sea Pines Plantation Co.,* 282 S.C. 113, 122–23, 317 S.E.2d 464, 470 (Ct.App.1984) ("Generally, where bias and prejudice of a trial judge is claimed, the issue must be raised when the facts first become known."). In any event, we find this argument to be without merit.

## IV. Constitutionality of Statute

 The Charrons contend they were denied due process and equal protection under the law because of an invidious classification of wages within the tax code that exempts certain wages from state income taxes. They also assert the code sections relating to section 12–54–40 are void because they are vague, confusing, and ambiguous. There is no indication that these issues were raised to the trial court; therefore, they are not preserved for our review. *See State v. Nichols,* 325 S.C. 111, 120–21, 481 S.E.2d 118, 123 (1997); *State v. Varvil,* 338 S.C. 335, 339, 526 S.E.2d 248, 250 (Ct.App.2000).

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court is

**AFFIRMED.**[2]

HEARN, C.J., and HUFF, J., concur.

---

**2.** Because oral argument would not aid the Court in resolving any issue on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.