## 11422

### COLUMBIA RY., GAS & ELECTRIC CO. v. CARTER *ET AL.*, TAX COMMISSION

#### (121 S. E., 377)

1. STATUTES—SUBSTANTIAL DOUBT AS TO CONSTRUCTION OF TAX STATUTE RESOLVED AGAINST GOVERNMENT.—Where substantial doubt exists as to the construction and interpretation of legislative action with respect to the enactment and enforcement of Tax Statutes, it must be resolved against the government.

2. TAXATION—TAX COMMISSION HELD WITHOUT AUTHORITY TO CERTIFY CORPORATE LICENSE TAXES FOR OPERATIONS DURING 1911 TO 1921.—Act March 1, 1922, (32 St. at Large, p. 947), relating to corporate license taxes, *held* not retroactive and to repeal Act Feb. 29, 1904 (24 St. at Large, p. 462 [Civ. Code, 1912, §§ 361-373]); hence the Tax Commission could not proceed under either Act to certify such taxes for operations during the years 1911 to 1921.

Before SHIPP, J., Richland, April, 1923.

Proceeding by Columbia Railway, Gas & Electric Company against S. T. Carter, Treasurer, and others, consti-

tuting South Carolina Tax Commission. Decree for plaintiff, and defendants appeal.

The Circiut decree follows:

The Columbia Railway, Gas & Electric Company (hereinafter spoken of as the Columbia Company), on June 30, 1911, became the lessee as well as the owner of all the outstanding stock and bonds of the Columbia Gas Light Company (hereinafter spoken of as the gas company), and has since continued as such lessee and owner.

The Columbia Company operated the property of the gas company during the years 1911 to 1921, inclusive, and sold the gas it made for $1,523,364. This aggregate sum it returned as gross receipts from year to year to the Comptroller General under the statute approved February 29, 1904 (24 Stat., 462, brought forward as Sections 361–373 of the Code of 1912, Vol. 1), but such returns, although actually made by the Columbia Company, were in the name of the gas company. During this period the Columbia Company annually paid the three-mill license tax on these gross receipts, also in the name of the gas company, amounting to $4,570.

The Tax Commission in July, 1922, originated the claim that the Columbia Company was legally and technically the owner of these receipts from the sale of gas, and that it should have returned them and paid the license tax thereon in its own name, and is liable now so to do, notwithstanding that these same dollars had been returned, and the tax paid thereon in the name of the gas company. The Tax Commission, therefore, in October, 1922, certified to the State Treasurer that the Columbia Company was due the State this sum of $4,570 as back taxes for the years stated. The State relies on *Columbia Railway, Gas & Electric Co. v. Jones,* 119 S. C., 480; 112 S. E., 267.

This certification was made over the protest of the Columbia Company that the Tax Commission was without legal authority because the Act approved March 1, 1922

(32 Stat., 947), had specifically repealed Sections 361–373 of the Code of 1912, which contain the Act of 1904 as codified. The Columbia Company contended, and still contends, that the Tax Commission could not proceed (in July-October, 1922), to certify these back taxes under the Act of 1904, because that Act had been repealed, and could not proceed under the Act of 1922, because that Act was not retroactive.

"It is very clear that the Act is prospective." *Belser v. S. C. Tax Commission,* 120 S. C., 182; 112 S. E., 261. *Carolina Glass Co. v. State,* 87 S. C., 289; 69 S. E., 391. *Loan Co. v. Logan,* 55 S. C., 302; 33 S. E., 372. It needs no discussion to establish that the Act of 1922 applies to reports to be filed and taxes paid in future and cannot furnish authority to the Tax Commission to certify back taxes against the Columbia Company on receipts for the years 1911–1921.

Could the Commission (after March 1, 1922), proceed under the Act of 1904, notwithstanding its specific repeal on that date by Section 14 of the Act of 1922? I am constrained to answer this question in the negative.

The tax imposed by Section 369, Volume 1, Code 1912, therein called a "license fee," is manifestly an excise tax, laid under the benefit theory of taxation upon the public service corporations named for the privilege of exercising their corporate franchises and carrying on their busness within the State. 26 R. C. L., p. 36, § 19. *Ware Shoals Manufacturing Company v. Jones,* 78 S. C., 221; 58 S. E., 811. *Columbia Railway, Gas & Electric Company v. Jones, supra.* But this tax was neither automatic nor self-executing. The Columbia Company (as a "light company") was required by the Act of 1904 (Section 1, Subd. 13; and Secton 361, Subd. 13, Code 1912), to make an annual report to the Comptroller General, stating, among other things, its entire gross receipts. The Comptroller General turned this report over to the State Board of Assessors, who ascer-

tained and determined the gross receipts, and certified the amount to the State Treasurer, who was charged with the duty of collecting the tax. Sections 6–9 of the Act of 1904, codified as Sections 366–369, Code 1912. As pointed out in *Columbia Railway, Gas & Electric Company v. Jones, supra,* the reports required by Section 1 of the Act of 1904 (Section 361 of the Code), are for the "purpose of aiding the tax officials of the State in assessing and levying the corporation license fees, * * * " and such reports are not conclusive as to the amount of the gross receipts to be ascertained and determined by such tax authorities.

The Act of 1904, as codified in Sections 361–373 of the Code of 1912, was amended in 1915 and again in 1916 (29 Stat., 125, 959), but the only change made, so far as concerns the tax here in question, was to substitute the Tax Commission in lieu of the State Board of Assessors. These amendments made no other change in the character of this tax or the manner of its collection.

The action by the Board of Assessors (or its successor, the Tax Commission), and State Treasurer, were conditions precedent to any legal liability of the Columbia Company to pay the tax. These constitute the assessment of the tax, which is a condition precedent to liability. *State v. Railway,* 54 S. C., 564; 32 S. E., 691. *Railway v. Kay,* 62 S. C., 28; 39 S. E., 785. *Insurance Co. v. Bradley,* 83 S. E., 418; 65 S. E., 433. The certificate of the Tax Commission to the State Treasurer in October, 1922, and the charge by the Treasurer were a prerequisite to any liability on the part of the Columbia Company to pay this tax. The Columbia Company might have incurred the penalties prescribed for failing to return these receipts (if the Act of 1904 had continued in effect), but it was not liable for the tax itself, because there was no tax due until the amount was certified and the tax charged.

This brings us immediately to the question whether after March 1, 1922, the Commission had any lawful authority

to certify this amount, or the Treasurer to charge and collect the tax thereon.

Section 14 of the Act of 1922 specifically repeals Sections 361–373 of the Code of 1912 (the Act of 1904) and all Acts amendatory thereto. There is no saving clause; no exception therefrom. Section 15 further repeals "all Acts or parts of Acts inconsistent herewith," emphasizing the firm determination of the Legislature to destroy all previous statutes touching this subject matter. Section 16 makes the Act effective immediately upon its approval by the Governor. It was approved on March 1, 1922. Repeal is "The abrogation or destruction of a law by a legislative Act." 2 Bouvier's Law Dic. (Rawle's Revision), 882. If the Act of 1904 (Sections 361–373 of the Code of 1912), and all Acts amendatory thereto were abrogated or destroyed on March 1, 1922, how could the Tax Commission and Treasurer act thereunder in October, 1922?

"The repeal, without a saving clause or provision, of a statute imposing a license tax or fee takes away the right to collect an unpaid tax which is due, even though a suit to collect the tax is pending." 25 R. C. L., p. 940, § 193, citing *Crow v. Cartledge,* 99 Miss., 281; 54 South., 947; Ann. Cas. 1913E, 470.

In *Flanigan v. County of Sierra,* 196 U. S., 553; 25 Sup. Ct., 314; 49 L. Ed., 597, suit was brought to recover the amount of a license and penalty for nonpayment imposed by an ordinance of the County Supervisors under the authority of a statute of 1897. The license ordinance was passed on May 31, 1900, and the suit was brought on June 25, 1900. The statute of 1897 was repealed by another statute of March 23, 1901, enacted while the suit was pending. The Court held that the repeal of the statute abrogated the right of the county to collect the license, and had the effect of abating the suit. It is said in part: "The general rule is that powers derived wholly from a statute are extinguished by its repeal. Sutherland, Stat. Const.,

§ 165. And it follows that no proceedings can be pursued under the repealed statute, though begun before the repeal, unless such proceedings be authorized under a special clause in the repealing Act. 9 Bacon, Abr., 226. This doctrine is oftenest illustrated in the repeal of penal provisions of statutes. It has, however, been applied by the Supreme Court of the State of California to the repeal of the power of counties to enact ordinances for revenue." The Court further quoted with approval from a decision of the California Supreme Court as follows: "The right is given by the ordinance to bring a civil suit to recover the amount so made a license tax. The civil remedy was created by the ordinance, and the remedy is repealed by the repeal of the ordinance as to revenue. In speaking of the rule as to enforcements of rights under repealed statutes, Endlich on the Interpretation of Statutes, § 480, says: 'The same rule applies to rights and remedies founded solely upon statute, and to suits pending to enforce such remedies. If, at the time the statute is repealed, the remedy has not been perfected or the right has not become vested, but still remains executory, they are gone.' "

The provision of Section 40 of the Code of 1912, to the effect that the repeal of an Act shall not revive any statute previously repealed or superseded, would seem to indicate that the legislative policy of this State is against finding a saving clause by implication.

These authorities are controlling, because they express the result necessarily reached here by a process of simple reasoning based upon the applications of elementary and long-recognized principles of statutory construction.

The Court cannot speculate as to the intention, much less as to the motives of the Legislature. It can only give effect to the legislative intention according to the ordinary and generally accepted meaning of the language used. The legislative intention "must be gathered from a literal interpretation of the language of the statute where it is plain and

unambiguous." *State Co. v. Jones,* 99 S. C., 218; 82 S. E., 1048. *Woodward v. Railway,* 47 S. C., 242; 25 S. E., 146.

When the Legislature said (by Section 14 of the Act of 1922) that Sections 361–373 of the Code (specifying each section by number) "are hereby repealed," it meant that these sections were abrogated, destroyed—no longer of force and effect. This is the usual and ordinary meaning of the simple language used. 36 Cyc., 1224. It is entirely to the point and free from all ambiguity. The Legislature had the right to destroy these sections, and it did so. And the minute it did so its agents (the Tax Commission and Treasurer), lost all authority to act under them.

The argument that the Legislature did not intend this result, that it made a mistake, that it was poor policy, assumes a supervisory power in the Court that it does not possess. The Legislature said so; therefore, it so intended. 25 R. C. L., § 217, p. 961. If it made a mistake, the Court cannot correct it.

I do not mean by these remarks to suggest that this repeal was, in fact, a mistake or that it was poor policy. There are arguments of policy that can be made on both sides. I assume that these conflicting viewpoints were presented to and given due weight by the legislative mind, and that its decision represents the course of wisdom and justice. It certainly does, so far as I am concerned. For me to hold that the Act of 1904 was in force after March 1, 1922, when the Legislature says simply and emphatically that it was destroyed, would be for me to refuse to give effect to the unambiguous mandate of the General Assembly in a sphere wherein it is supreme, and this I cannot do.

Why the specific detailed provisions of Section 14 in addition to the general repealing clause of Section 15? If certainty can be made more certain, simplicity made more simple, then this has here been done.

Defendants contend that the tax had accrued and so was continued by the Act of 1922. But they concede that, even

if it had accrued, the Legislature could abrogate it, if it so desired. When the Legislature "repealed" it, this abrogated it.

But nothing had accrued under the Act of 1904 when it was abrogated on March 1, 1922. The complaint alleges (paragraph 4) that the claim of the Tax Commission was first advanced in July, 1922, hearings subsequently held, and the certificate to the Treasurer sent in October, 1922. These are facts admitted by the demurrer.

Defendants also contend that, where one statute is incorporated in a later statute, this amounts to a re-enactment of the former statute, and is to be construed as a new enactment. Of course, the Act of 1922 is effective according to its language as of and from March 1, 1922, but a portion of its effect is to destroy the Act of 1904 as of that date, and abrogate the rights of all officers of the State to take any further action under the Act of 1904. Nor does the Act of 1922 authorize the state officers to impose, charge, or collect taxes due for the years 1911–1921, as defendants concede.

I have carefully considered the authorities cited by the defendants in so far as they are available. It seems to me that they should be classed as contests between private persons to which the State (the Legislature) is not a direct party. In those cases the question involved was not only as to what was the intention of the Legislature as expressed in the repealing statute, but also, to some extent, the question as to how far the Legislature could by the repeal of an existing statute affect the rights of third persons which have accrued under that statute. The Constitution imposes some restrictions on the power of the Legislature to affect the rights of persons accrued under existing law, although in those cases it is a question of legislative intention, within the constitutional limits, as to the effect of the repealing statute.

A tax is "a pecuniary burden imposed for the support of the government"—"a demand of sovereignty." A tax is not

a·debt. It is not contractual. It is involuntary on the part of the subject. 2 Bouvier's Law Dictionary (Rawle's Revision) 1093, citing *City Council of Charleston v. Ashley Phosphate Co.,* 34 S. C., 541, 552; 13 S. E., 845.

It follows that there is no constitutional question involved in this case, and no question of the effect of the repeal on the rights of third persons. The power of the Legislature is supreme on the question of repealing the tax statute, and the sole and exclusive question in this case is, What was the legislative intention? It seems to me that the Legislature has expressed, as clearly as it possibly could, the intention to destroy the Act of 1904, thus destroying the right of the Tax Commission to take any further steps thereunder.

It is, therefore, ordered, adjudged, and decreed that the certificate of the South Carolina Tax Commission to the State Treasurer, described in the complaint, be, and the same is hereby, adjudged to be null and void, and that the defendants, and each of them, in their official capacities, be, and they are hereby, permanently enjoined and restrained from enforcing against or collecting from the plaintiff the tax referred to in the complaint.

*Messrs. Samuel M. Wolfe, Attorney General,* and *John M. Daniel, Assistant Attorney General,* for appellant, cite: *Company liable prior to Act of 1922, No.* 531: 119 S. C., 480. *Old law remains in force unless Legislature plainly indicates otherwise:* 91 Fed., 297; 99 Fed., 534. *Repeal of a statute adopted in another and later Act will not affect its operation as part of the Act adopting it:* Suth. Stat. Cons., 337; 91 Pac., 1107; 25 R. C. L., 134; 17 Sup. Ct. Rep., 7; Ann. Cas. 1912D, 536; 218 Pa. St., 146.

*Mr. J. B. S. Lyles* for respondent: *Construction of tax statute against the government in case of doubt:* 68 L. Ed., 48. *Interpretation of effect of repealing statutes:* Suth.

St. Const., 165; 196 U. S., 553; Endlich Interpretation of Statutes, 480.

February 11, 1924.

The opinion of the Court was delivered by Mr. Justice Marion.

The reasons urged by appellants for impeaching the validity of the conclusion reached by the Circuit Court have been accorded careful consideration. Under the established rule that, where substantial doubt exists as to the construction and interpretation of legislative action with respect to the enactment and enforcement of tax statutes, the doubt must be resolved against the government, we are constrained to concur in the view announced and applied in the well-considered decree of Judge Shipp.

It is accordingly adjudged that for the reasons therein stated the decree of the Circuit Court is affirmed.

Messrs. Justices Watts, Fraser and Cothran concur.

Mr. Chief Justice Gary did not participate.