12663

AMERICAN AGR. CHEMICAL CO. v. QUERY *ET AL.*, S. C. TAX COMMISSION

(148 S. E., 224)

*John M. Daniel, Atty. Gen.,* and *Cordie Page* and *J. Ivey Humphrey, Asst. Attys. Gen.,* for appellants.

*Messrs. Herbert & Dial,* for respondent,

May 14, 1929.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an appeal from an order of his Honor, Judge Whaley, overruling a demurrer interposed by the Tax Commission to the complaint filed by the fertilizer company. The demurrer develops the controversy between the parties, which will appear from the following statement:

On July 1, 1926, the fertilizer company had on hand at its factory in this state goods "which were not in a final state of manufacture" (quotation from the complaint), valued at $868,300. It made a return thereof to the Tax Commission at that figure and paid the license tax of $868.30 under protest and brought this action to recover that amount. The ground of its protest as stated in the notice served at the time of the payment was: "That the articles in question were only partially manufactured at the time the repeal took effect, and further that in any event the Statute was not intended to cover manufactured goods on hand at the time of its repeal inasmuch as the only means of admeasurement is to be derived from the receipts, none of the articles covered by the enclosed returns having been sold; and generally that the Statute was not intended to cover such case, and does not cover same."

In the complaint the company takes the further position: "That the repeal of the said Act of March, 1923, divested the said Tax Commission of any power to levy any tax under the provisions of Section 11-A of the said Act of 1923."

Passing by the possible objection that the company is confined to the grounds stated in the notice of protest, we shall consider both grounds.

Section 11-A of the Act of 1923 (33 St. at Large, p. 21) provides for a license tax of one-tenth of 1 per cent. upon the entire *receipts* from sales made in or without the State, whether actually received or not, and provides: "In the case of any article manufactured in whole or in part within this State, and not sold or disposed of in this State, the value thereof shall be included," upon which the tax is to be levied and paid.

Taking the two provisions together, the tax authorized by the Section is to be levied (1) upon receipts from *sales* made in or without the State, evidently referring to *deliveries;* (2) upon the *value* of goods fully manufactured and not sold or disposed of in this State, which would include goods on hand as well as goods shipped elsewhere, in contemplation of sales, to be converted or additionally treated; (3) upon the value of goods partially manufactured and not sold or disposed of in this State, which would include goods on hand in that condition.

It seems clear, therefore, that there is nothing in the contention of the company that the goods on hand partially manufactured did not constitute a fully marketable product and for that reason were not subject to the tax.

The trial Judge, in our opinion, was clearly wrong in the construction of the Act: "This tax was to be assessed on manufactured products according to the sums earned or charged for the manufactured articles. In case of articles partly manufactured in the State and shipped out of the State and disposed of out of the State, the value of the article as manufactured in the State was to be taken and the tax assessed on it."

As counsel for the appellant aptly observes: "His Honor states in his order, 'In case of articles partly manufactured in the State and shipped out of the State and disposed of out of the State, the value of the article as manufactured in the State was to be taken and the tax assessed on it.' The statute provides, 'in the case of any article manufactured

in whole or in part within this State, and not sold or disposed of in this State, the value thereof shall be included.' It is apparent that the statement by his Honor is quite different from that statement in the statute. His Honor's construction limits the provision of the statute to *articles which were shipped out of the State and disposed of out of the State,* while the statute taxes *all partially manufactured articles which have not been sold or disposed of in this State.* In other words, the statute taxes *everything except that which has been sold in the State,* which includes all partially manufactured articles on hand as well as that which has been shipped out of the State; while his Honor's construction taxes only *that which has been shipped out of the State and sold out of the State."*

The most serious contention of the respondent is as to the effect of the repealing statute upon the Act of 1923. In the appropriation Act of 1926 (34 St. at Large, p. 1119) is found the following: "That the license tax for every person, firm or corporation engaged in the business of manufacturing or mining as provided in Section 11-A of an Act entitled 'An Act to Raise Revenue for the Support of the State Government,' approved March 26th, 1923, is repealed to take effect on the first day of July, 1926, so that no person, firm or corporation engaged in the business of manufacturing or mining shall be subject to the said tax on any goods manufactured or products of the mine mined after the first day of July, 1926."

The contention is that this statute repealed entirely the Act of 1923. If that had been the intention of the Legislature, the statute would have come to a full stop after the word "repealed." Instead of this it proceeds with the statement that it should not go into effect until July 1, 1926, and adds the explanatory and limiting effect of the repeal: "So that no person, firm or corporation engaged in the business of manufacturing or mining shall be subject to the said

tax on any goods manufactured or products of the mine mined after the first day of July, 1926."

We think that the statute meant to keep alive the Act of 1923 until July 1, 1926, and the provision quoted can only mean to exempt the goods manufactured after that date from the tax; *"Expressio unius est exclusio alterius."*

The judgment of this Court is that the order appealed from be reversed, and the case remanded to the Court below for judgment in favor of the defendants.

MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.

MR. CHIEF JUSTICE WATTS (dissenting) : This action was instituted by the plaintiff for the recovery of $868.32 assessed against the plaintiff by the South Carolina Tax Commission and paid under protest. The tax was assessed under Section 11-A of Act No. 11, Acts of 1923, levying a tax on manufacturing. Section 11-A of this Act was repealed by the Appropriation Act of 1926, to take effect July 1, 1926. The taxes in controversy were levied according to the allegations of the complaint, upon goods which were in process of manufacture at the time the repealing statute took effect. The defendants demurred to the complaint and contended that the goods were manufactured in part within the State and therefore taxable under subdivision (a) of Section 11-A of the Act above referred to. The matter was heard by his Honor, Judge Whaley, in the County Court of Richland County, who overruled the demurrer and ordered the amount of the taxes refunded. Notice of intention to appeal was duly served on the attorneys for plaintiff.

Questions involved:

(1) Does Section 11-A of "An Act to Raise Revenue for the Support of the State Government," at page 21, Statutes of 1923, apply to fertilizer in process of manufacture on July 1, 1926?

(2) Does the repeal, without a saving clause, of the statute above providing for the levy of a license tax, destroy the right to collect taxes under said statute?

Section 11-A of an Act entitled "An Act to Raise Revenue for the Support of the State Government," approved March 26, 1923, provides for a license tax on all persons engaged in the business of manufacturing "which shall be measured by and graduated in accordance with: (a) In the case of manufacturing the entire receipts, including all sums earned or charged, whether actually received or not, and in the case of any article manufactured in whole or in part within this State, and not sold or disposed of in this State, the value thereof shall be included."

Thus, first, it clearly appears that, in order for the tax to be levied, the goods must have been sold either in this State or in another State, as until the goods were sold there was no method of admeasurement. In other words, the tax was collectible on the gross output of the manufacturer as distinguished from gross receipts. The latter part is applicable to articles partially manufactured in this State and not sold or disposed of in this State, and the value thereof could have been arrived at by the price for which they were sold; but in the case at bar the goods had not been completely manufactured, had not been sold, not shipped out of the State, and there was no method of arriving at the value thereof at the time the statute was repealed.

The clause undoubtedly was inserted to prevent a manufacturer, operating a factory in this State, shipping goods from the State before the same were in final marketable condition, and thereby evading the tax. The statute specifically provides that the tax shall be measured by the entire receipts.

Further, the repealing Act has no saving clause, and therefore the Tax Commission has lost the right to collect any taxes thereunder. "The repeal, without a saving clause or provision, of a Statute imposing a license tax or fee, takes away the right to collect an unpaid tax which is due, even

though a suit to collect the tax is pending." 25 R. C. L., 940; *Columbia Railway, Gas & Electric Co. v. Carter,* 127 S. C., 473, 121 S. E., 377. "The general rule is that powers derived wholly from a statute are extinguished by its repeal." *Columbia Railway, Gas & Electric Co. v. Carter, supra.*

And further: "Under the established rule that, where substantial doubt exists as to the construction and interpretation of legislative action with respect to the enactment and enforcement of tax statutes, the doubt must be resolved against the government." Language used by Mr. Justice Marion in *Columbia Railway, Gas & Electric Co. v. Carter, supra.*

To allow this tax to be collected would in effect result in double taxation, because undoubtedly the respondent was forced to pay the license tax on all goods completed after the same took effect, and in all probability the manufacture of the goods first returned for taxation had been largely completed before the tax was admeasured by the total value of said goods and not by the amount that the value was enhanced after the statute took effect.

The exceptions should be overruled, and judgment affirmed.