STATE OF NORTH CAROLINA, EX REL. STATE HOSPITAL AT RALEIGH, v. SECURITY NATIONAL BANK, GUARDIAN OF EARL N. BETTS, AN INSANE PERSON.

(Filed 28 January, 1935.)

1. **Asylums A a—**

   The State Hospital at Raleigh is a public corporation, created as an agency of the State for the care of insane persons who are residents of the State, and the hospital is subject to the control of the General Assembly.

2. **Asylums B a—Nonindigent insane may be treated at hospital, but must pay at least actual cost of maintenance.**

   Under constitutional authority and statutory provision, indigent insane who are residents of the State may be cared for in the State Hospital at Raleigh without charge, and are to be given preference in admission over nonindigent insane, while nonindigent insane may be admitted and cared for in the hospital under certain circumstances, but have always been required by statute to pay at least the actual cost of their care, treatment, and maintenance, Art. XI, sec. 10, C. S., 6162, 6186, but it is not required that the directors of the hospital finally determine the status of a patient at the time of his admission, the financial status of the patient being subject to the vicissitudes of fortune.

**3. Asylums B d—**

Where a patient admitted to the State Hospital at Raleigh as an indigent person thereafter becomes nonindigent, he thereupon has the same rights as other nonindigent persons, and is entitled to remain in the hospital upon the payment of the actual cost of his care and maintenance therein.

**4. Same—Under provisions of statute indigent inmate upon becoming nonindigent is liable for cost of maintenance from date of admission.**

Defendant's ward, a veteran of the World War, was admitted to the State Hospital at Raleigh as an indigent person, and at the time of his admission it was the settled policy of the State to care for indigent persons without charge, and to charge nonindigent persons at least the actual cost of their care. Several years thereafter the Federal Government began to make monthly payments from War Risk Insurance to defendant as guardian, and the funds were invested in securities. Upon learning of the estate several years after the payments began, the State Hospital demanded payment for the actual cost of maintenance of the ward in the institution, and thereafter the hospital instituted suit against the ward's estate to recover the cost of his maintenance from the date of his admission into the hospital: *Held*, under the provisions of ch. 120, Public Laws of 1925, ratified several years after the admission of the ward into the institution, the hospital was entitled to recover the actual cost of the ward's care and maintenance for the whole period the ward was an inmate of the hospital, including the time the ward was indigent as well as the time he was nonindigent, and including the period both before and after demand by the hospital for the cost of his maintenance, and by the provisions of the statute no plea of the statute of limitations is available to defeat recovery.

**5. Constitutional Law E a—State has no contractual duty to care for insane, and change of regulations does not impair obligations of contract.**

Chapter 120, Public Laws of 1925, providing that where a person admitted to the State Hospital at Raleigh as an indigent person thereafter becomes nonindigent, such person or his estate should be liable to the hospital for the actual cost of his care and maintenance in the hospital from the date of his admission, in accordance with the settled policy of the State in regard to nonindigent inmates, although such person may have been admitted prior to the effective date of the statute, is not unconstitutional upon the ground that it violates the obligations of a contract, there being no contractual duty on the part of the State to care for and maintain insane persons in such institution, the hospital being a charitable institution of the State, maintained voluntarily in recognition of Christian principles. Art. XI, sec. 7.

**6. Insurance N a—**

Where funds from War Risk Insurance have been invested in securities by the guardian of an insane veteran, such funds are subject to charges for the care and maintenance of the veteran in the State Hospital, sec. 454, Title 38, World War Veterans' Act of 1924, not applying to investments made with the proceeds of the insurance.

APPEAL by defendant from *Grady, J.,* at March Term, 1934, of WAKE. Affirmed.

This is an action to recover of the defendant the entire cost of the care, treatment, and maintenance of its ward, Earl N. Betts, from the date of his admission as a patient in the State Hospital at Raleigh until the commencement of this action.

When the action was called for trial, it was agreed by the plaintiff and the defendant:

"1. That on 3 February, 1919, Earl N. Betts, a veteran soldier, who had served in the military forces of the United States, was adjudicated *non compos mentis* by the clerk of the Superior Court of Harnett County, North Carolina, and was committed by an order of the said clerk to the State Hospital at Raleigh; that the said Earl N. Betts was admitted to the said hospital on 12 February, 1919, as an insane person, and has remained in said hospital as a patient from the date of his admission until the present time; and that at all times since his admission to said hospital its officials have known that the said Earl N. Betts is a veteran soldier of the United States Army.

"2. That at the time of his commitment and admission to the State Hospital at Raleigh the said Earl N. Betts was an indigent person, without funds or property with which to pay for his support and treatment in said hospital, and that he remained in said hospital as an indigent person until 16 October, 1928.

"3. That on 16 October, 1928, the Veterans' Bureau of the United States paid to the clerk of the Superior Court of Wake County, North Carolina, for the benefit of the said Earl N. Betts, the sum of $1,484, representing veteran's compensation awarded the said Earl N. Betts pursuant to the provisions of the World War Veterans' Act, U. S. C. A., Title 38, section 71, *et seq.*

"4. That on 16 October, 1928, the Commercial National Bank of Raleigh was appointed and qualified as guardian for the said Earl N. Betts; that on 22 March, 1932, the North Carolina Bank and Trust Company succeeded the said Commercial National Bank as guardian of the said Earl N. Betts, and the property belonging to his estate consisting of funds received from the Veterans' Bureau of the United States, together with securities purchased with said funds, was delivered to the said North Carolina Bank and Trust Company, successor guardian; and that on 24 October, 1933, the defendant Security National Bank was appointed and qualified as the successor guardian of the said Earl N. Betts, and assumed custody of his estate, which consists solely of funds received from the Veterans' Bureau of the United States, and securities purchased with said funds by the respective guardians as they received

the same, the said funds and securities now amounting to $5,293, as follows:

$2,050.00  Par value U. S. Government Bonds.
2,000.00  N. C. 4¼% Highway and General Fund Bonds.
1,200.00  Note, secured by deed of trust on real estate.
    43.00  Cash.

$5,293.00

"5. That from 16 October, 1928, to 30 September, 1933, the said Earl N. Betts received by his respective guardians, above named, the sum of $100.00 per month from the Veterans' Bureau of the United States, pursuant to the provisions of the World War Veterans' Act, U. S. C. A., Title 38, section 71, *et seq.;* that the said Earl N. Betts is unmarried and has dependent upon him for support his mother, who has been paid a monthly allowance of $35.00 by the respective guardians of the said Earl N. Betts out of his estate, since 16 October, 1928; and that payment of compensation to the said Earl N. Betts by the Veterans' Bureau of the United States was discontinued on 30 September, 1933, pursuant to the provisions of the World War Veterans' Act.

"6. That the first notice received by the officials of the State Hospital at Raleigh of the appointment of a guardian of Earl N. Betts, and of the payment to said guardian of funds by the Veterans' Bureau of the United States was by a letter dated 9 February, 1933, from the North Carolina Bank and Trust Company, guardian; that on 13 February, 1933, the superintendent of the State Hospital at Raleigh replied to said letter, advising the North Carolina Bank and Trust Company, guardian, that its ward, the said Earl N. Betts, then needed clothing, and requesting the said guardian to pay to said hospital for the care, treatment, and maintenance of its ward by said hospital the sum of $25.00 per month; that on 14 February, 1933, the North Carolina Bank and Trust Company, guardian, wrote to the superintendent of the State Hospital at Raleigh, enclosing a check for $50.00, in payment for the care, treatment, and maintenance of its ward, the said Earl N. Betts, for the months of January and February, 1933, and stating that if the court should so instruct it, the said guardian would issue a voucher each month for the sum of $25.00 to the said State Hospital at Raleigh; that the said guardian, in said letter, further advised the superintendent of said hospital that the estate of its ward, which it then had in its possession, consisted of funds which it had received for its ward from the Veterans' Bureau of the United States, and that if the said hospital wished to make a demand on it for payment for the care, treatment, and maintenance of its ward prior to 1 January, 1935, the

said Hospital should file a petition with the clerk of the Superior Court of Wake County for an order directing the guardian in the matter, and that the said guardian would gladly comply with any order which the said clerk should make; that thereafter, on 16 February, 1933, the superintendent of the State Hospital at Raleigh mailed to the North Carolina Bank and Trust Company, guardian of Earl N. Betts, a statement of the amount which the said hospital demanded that the said guardian pay to said hospital for the care, treatment, and maintenance of its ward from the date of his admission into said hospital to the date of said statement, said amount being $4,125; that thereafter, on the 12th day of each month until 12 August, 1933, the said guardian paid to said hospital the sum of $25.00, making a total paid by the North Carolina Bank and Trust Company, guardian, to the said hospital of $200.00; and that on 20 December, 1933, the superintendent of the State Hospital at Raleigh mailed to the defendant Security National Bank, guardian, a statement of the amount which the said hospital then claimed as due to it for the care, treatment, and maintenance of its ward, Earl N. Betts, from the date of his admission to said hospital, to wit, 12 February, 1919, to 12 January, 1934, less the sum of $200.00, paid by his former guardian. The defendant refused to pay said amount.

"7. That the actual cost of the care, treatment, and maintenance of Earl N. Betts by the State Hospital at Raleigh during the period hereinabove referred to, as fixed and determined by the board of directors of said hospital, was $20.00 per month from 4 March, 1922, to 4 July, 1923, and $25.00 per month from 4 July, 1923, to 4 January, 1934.

"8. That no notice was given by the board of directors or by any official of the State Hospital at Raleigh to any legal representative of Earl N. Betts of a demand for the payment of any amount for the expense incurred by said hospital in the care, treatment, or maintenance of the said Earl N. Betts as a patient in said hospital prior to 16 February, 1933, when the said hospital presented to the North Carolina Bank and Trust Company, guardian of Earl N. Betts, a statement of said amount; nor has any demand been made by the said hospital upon any legal representative of the said Earl N. Betts for his removal from said hospital."

On the foregoing facts, the plaintiff contended that under the provisions of section 6186 of the Consolidated Statutes of North Carolina, and of chapter 120 of the Public Laws of North Carolina, 1925, the plaintiff is entitled to recover of the defendant the sum of $20.00 per month for sixteen months from 4 March, 1922, to 4 July, 1923, and the sum of $25.00 per month for 126 months, from 4 July, 1923, to 4 January, 1934, less the sum of $200.00, or the aggregate amount of $3,270.

On the other hand, the contentions of the defendant, as they appear in the record, are as follows:

"1. That the estate of Earl N. Betts in the custody of the defendant guardian consists solely of funds paid the said Earl N. Betts by the Veterans' Bureau of the United States, pursuant to the act of Congress known as the World War Veterans' Act, or securities purchased with said funds, and that the said estate and funds are, therefore, exempt from claims of any and all creditors of the said Earl N. Betts, including the plaintiff herein, pursuant to the said World War Veterans' Act, Title 38, U. S. C. A., section 454.

"2. That the defendant guardian of Earl N. Betts is not liable for the costs of his treatment or maintenance by the State Hospital at Raleigh after 4 March, 1925, and that after that date the said State Hospital was directed by law to discharge the said Earl N. Betts, and to deliver him to the United States Veterans' Administration, pursuant to the provisions of section 1, chapter 51, Public Laws of North Carolina, 1925.

"3. That the defendant guardian is not liable for the costs of the maintenance of the said Earl N. Betts by the State Hospital at Raleigh prior to the date the said guardian first received notice from said hospital of its demand that the said guardian either pay the costs of the maintenance of its ward or remove him from said hospital, to wit: 20 December, 1933, as required by section 4 of chapter 120, Public Laws of North Carolina, 1925.

"4. That prior to 16 October, 1928, the said Earl N. Betts had no estate or property whatever belonging to him, and was an indigent patient in the State Hospital at Raleigh, and as such was entitled by law to receive treatment in said hospital free of charge, and that prior to said date the said Earl N. Betts was not liable for any part of the costs of his maintenance and treatment by the said hospital; that chapter 120, Public Laws of North Carolina, 1925, is retroactive in its operation, and cannot be interpreted as retroactive in its effect, for that such retroactive effect would render the statute unconstitutional and void, as a violation of the Fourteenth Amendment to the Constitution of the United States; and that therefore the defendant guardian of Earl N. Betts cannot be held liable for the cost of the treatment and maintenance of its ward by the State Hospital at Raleigh, prior to 16 October, 1928.

"5. That all claims or causes of action of the State Hospital of Raleigh for the cost of its care, treatment, and maintenance of the said Earl N. Betts, arising prior to 4 March, 1925, are barred by the three-year statute of limitations of North Carolina."

Upon its consideration of the facts agreed, and of the law applicable to these facts, the court was of opinion that the contention of the plain-

tiff should be sustained, and that each and all of the contentions of the defendant should be rejected.

It was accordingly ordered and adjudged by the court that the plaintiff recover of the defendant the sum of $3,270, with interest and costs.

From this judgment the defendant appealed to the Supreme Court.

*Attorney-General Brummitt and R. C. Maxwell for plaintiff.*
*Willis Smith and John H. Anderson, Jr., for defendant.*
*J. D. DeRamus and J. H. Whittington for U. S. Veterans' Administration, amicus curiæ.*

CONNOR, J. There is no error in the judgment in this action. The judgment is in accordance with the contentions of the plaintiff that on the facts agreed, and under the law applicable to these facts, the plaintiff is entitled to recover of the defendant the sum of $3,270. It appears on the face of the judgment that each and all of the contentions of the defendant were carefully considered by the court, and upon such consideration were not sustained. In this there was no error.

The State Hospital at Raleigh is a public corporation, created by the General Assembly of North Carolina as an agency of the State for the care, treatment, and maintenance of insane persons who are residents of this State. It is supported primarily by funds appropriated from time to time by the General Assembly out of the revenues of the State derived from taxes paid into the State Treasury. It is under the management of a board of directors, whose members are appointed by the Governor of the State, and whose appointments are subject to confirmation by the State Senate. The corporation is at all times and in all respects subject to the control of the General Assembly of North Carolina.

The State Hospital at Raleigh, as a public corporation, owns and operates a hospital, which is located on Dix Hill near the city of Raleigh. This hospital is one of the charitable institutions of the State of North Carolina and is maintained by the State in recognition of the principle that "beneficent provision for the poor, the unfortunate, and orphans is one of the first duties of a civilized and Christian State." Const. of N. C., Art. XI, sec. 7.

It is provided by statute that the board of directors of the State Hospital at Raleigh shall make such rules and regulations for the operation of the hospital owned by said corporation as shall make said hospital as nearly self-supporting as is consistent with the purpose for which it was established. C. S., 6162. This statute was in force on 12 February, 1919, when Earl N. Betts was admitted as a patient in said hospital. It declares the policy of the State with respect to the opera-

tion of the State Hospital for the Insane at Raleigh as well as for the operation of similar institutions.

It is further provided by statute that in the admission of patients to the State Hospital at Raleigh "priority of admission shall be given to the indigent insane, but the board of directors may regulate admissions, having in view the curability of patients, the welfare of the hospital, and the exigency of particular cases. The board of directors may, if there be sufficient room, admit other than indigent patients upon the payment of proper compensation." C. S., 6186. This statute, which was also in force on 12 February, 1919, shows that it was contemplated by the General Assembly that a distinction should be made by the board of directors of the State Hospital at Raleigh between patients who were indigent and patients who were nonindigent, and that the latter would be required to pay the costs of their care, treatment, and maintenance by the hospital, while no charge would be made by the hospital for the care, treatment, or maintenance of the former. There is nothing in this statute, however, or in any other pertinent statute, which shows that the status of a patient, with respect to his financial condition, shall be finally determined as of the date of his admission to the hospital. It would be manifestly unjust to the State and its taxpayers, and in some cases to patients of the hospital, if the statute so required. Experience shows that the financial condition of persons, whether sane or insane, is subject to frequent changes, and that patients who are indigent at the date of their admission, as defined by this Court in *In re Hybart,* 119 N. C., 359, may subsequently become nonindigent, and *vice versa.* The Constitution of North Carolina empowers the General Assembly to provide that indigent insane persons shall be cared for at the charge of the State. Const. of N. C., Art. XI, sec. 10. There is no provision in the Constitution requiring or authorizing the General Assembly to provide for the care, treatment, or maintenance of nonindigent insane persons at the expense of the State. The General Assembly has at all times by appropriate statutes required such persons to pay at least the actual cost of their care, treatment, and maintenance, while they are patients in State institutions.

Chapter 120, Public Laws of North Carolina, 1925, was ratified on 4 March, 1925, and has been in full force and effect since said date.

This statute provides, among other things, that all persons admitted to the State Hospital at Raleigh or to any of the other charitable institutions of this State named in the act, "be and they are hereby required to pay the actual cost of their care, treatment, training, and maintenance at such institution," and that such actual cost shall be determined from time to time by the board of directors of such institution.

The sections of the act which are applicable to the instant case are as follows:

"Sec. 4. From and after the passage of this act the respective boards of trustees or directors of each institution shall ascertain which of the various patients, pupils, or inmates thereof, or which of the patients, guardians, trustees, or other persons legally responsible therefor, are financially able to pay the cost to be fixed and determined by this act, and, so soon as it shall be ascertained, such patient, pupil, inmate, parent, guardian, trustee, or other person legally responsible therefor shall be notified of such cost, and in general of the provisions of this act, and such patient, pupil, inmate, or the parent, guardian, trustee, or other person legally responsible therefor shall have the option to pay the same or to remove the patient, pupil, or inmate from such institution, unless such person was committed by an order of a court of competent jurisdiction, in which event the liability for the cost as fixed by this act shall be fixed or determined and payment shall be made in accordance with the terms of this act."

"Sec. 5. That immediately upon the fixing of the amount of such actual cost, as herein provided, a cause of action shall accrue therefor in favor of the State for the use of the institution in which such patient, pupil, or inmate is receiving training, treatment, maintenance, or care, and the State, for the use of such institution, may sue upon such cause of action in the courts of Wake County, or in the courts of the county in which such institution is located, against said patient, pupil, or inmate, or his parents, or either of them, or guardian, trustee, committee, or other person legally responsible therefor, or in whose possession and control there may be any funds or property belonging to either the said pupil, patient, or inmate, or to any person upon whom the said patient, pupil, or inmate may be legally dependent, including both parents."

"Sec. 6. That no statute of limitations shall apply to or constitute a defense to any cause of action asserted by any of the above-named institutions for the collection of the cost of care, treatment, training, or maintenance, or any or all of these, against any person liable therefor, as herein provided, and all statutes containing limitations which might apply to the same are hereby *pro tanto* repealed, as to all such causes of action or claims and this section shall apply to all claims and causes of action for like cost heretofore incurred with such institutions and now remaining unpaid."

"Sec. 7. That this act shall not be held or construed to interfere with or to limit the authority and power of the management of the boards of trustees or directors of any of the institutions named herein, to make provision for the care, custody, treatment, and maintenance of all indigent persons who may be otherwise entitled to admission in any of the said institutions, and as to indigent pupils, inmates, and patients, the same provisions now contained in the several statutes relat-

23—207

ing thereto shall continue in force, but if at any time any of the said indigent patients, pupils, or inmates shall succeed to or inherit or acquire, in any manner, property, or any of the persons named above as legally responsible for the cost of care, treatment, and maintenance of the pupil, inmate, and patient at the above-named institutions shall acquire property, or shall otherwise be reputed to be solvent, then each of said institutions shall have the full right and authority to collect and sue for the entire cost and maintenance of such inmate, pupil, or patient, without let or hindrance on account of any statute of limitations whatsoever."

Under the foregoing statutory provisions, the plaintiff is entitled to recover in this action the entire cost of the care, treatment, and maintenance of Earl N. Betts by the State Hospital at Raleigh, as determined by the board of directors of said hospital, unless, as contended by the defendant, such of said statutory provisions as are applicable to this case are void.

It must be conceded, we think, that the plaintiff is entitled to recover the actual cost of the care, treatment, and maintenance of Earl N. Betts by the State Hospital at Raleigh, since he ceased to be an indigent patient of said hospital. When he became a nonindigent patient of the hospital, he had no further right to its care, treatment, and maintenance at the expense of the State, because he had been admitted to the hospital as an indigent patient. After he became nonindigent, he had the same right as other nonindigent patients—that is, the right to remain in said hospital as a patient only so long as he or his guardian paid the actual cost of his care, treatment, and maintenance, or until he had been lawfully discharged or removed from the hospital. The statutory provisions to that effect are manifestly not void. The provisions of the statute which confer upon the State the right to recover for the use of the State Hospital at Raleigh the entire cost of the care, treatment, and maintenance of a patient in said hospital who, although he was indigent at the date of his admission, thereafter has become nonindigent, are not void, because such provisions are retroactive in purpose and effect. Neither the State nor the State Hospital at Raleigh is under any contractual obligation to a patient in said hospital who was indigent at the date of his admission, and for that reason as a matter of State policy is cared for, treated, and maintained at the expense of the State, or of the said hospital, to continue such care, treatment, and maintenance after such patient has ceased to be indigent. See *Hospital v. Fountain,* 129 N. C., 90, 39 S. E., 734, and 128 N. C., 23, 38 S. E., 34. In that case it was held that the guardian of an insane person who was indigent when she was admitted as a patient in the State Hospital at Raleigh, but who thereafter became nonindigent, was liable for the cost

of her care, treatment, and maintenance by the hospital, both before and since she became nonindigent. See, also, *S. v. Rommee,* 93 Conn., 571, 107 Atl., 519, where it is said by the Court: "The State, in making expenditures for the care and support of an insane person committed to an institution designed to provide the support and attention which he needs enters into no contract relation with that person. It simply acts of its own volition, in response to the dictates of humanity, in the performance of a governmental duty now recognized as resting upon a modern State, and for the good of the individual concerned. There is not only no promise on the part of the State to the unfortunate, or his personal representatives, but no legal consideration for one. The burden which the State assumes and bears is assumed and borne as its purely voluntary undertaking, and not as a result of a contract obligation to that end entered into with him, or other person representing him."

The contention of the defendant in this action that the estate of its ward now in its hands as his guardian is not subject to the claim of the plaintiff because such estate consists of securities purchased from time to time by his successive guardians with funds paid to them by the United States Government as compensation awarded to Earl N. Betts as a veteran of the United States Army, under the provisions of the act of Congress, involves a construction of section 454 of Title 38 of the World War Veterans' Act, 1924. This section is as follows:

"SEC. 454. The compensation, insurance, and maintenance and support allowance payable under Parts II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Parts II, III, or IV; and shall be exempt from all taxation. Such compensation, insurance, and maintenance and support allowance shall be subject to any claims which the United States may have, under Parts II, III, IV, and V, against the person on whose account the compensation, insurance, or maintenance and support allowance is payable."

This section was construed by this Court in *Martin v. Guilford County,* 201 N. C., 63, 158 S. E., 847. It was held in that case that where money which had been awarded to a veteran of the United States Army under the act of Congress as compensation has been paid to him, and has been invested by him in the purchase of property in this State, such property is not subject to the provisions of said section, and is therefore not exempt from taxation by the State. The section was so construed by the Supreme Court of the United States in *Trotter v. Tennessee,* decided on 4 December, 1933, and reported in 290 U. S., 354, 78 L. Ed., 358. *Justice Cardozo,* writing the opinion in that case, and speaking for the Court, says:

"We think it very clear that there was an end to the exemption when they (the moneys paid as compensation) lost the quality of moneys and were converted into land and buildings. The statute speaks of 'compensation, insurance, and maintenance and. support allowance payable' to the veteran, and declares that these shall be exempt. We see no token of a purpose to extend a like immunity to permanent investments, or fruits of business enterprises. Veterans who choose to trade in land, or in merchandise, in bonds, or in shares of stock, must pay their tribute to the State. If immunity is to be theirs, the statute conceding it must speak in clearer terms than the one before us here."

Under the statute as construed by the Supreme Court of the United States and by this Court, the contention of the defendant cannot be sustained. The estate of Earl N. Betts, consisting of securities now held by his guardian, is subject to the claim of the plaintiff in this action, notwithstanding the fact that such securities were purchased by his guardians with moneys paid to them by the United States Government as compensation awarded under the act of Congress to the said Earl N. Betts as a veteran of the Army of the United States.

We find no error in the judgment in this action. It is

Affirmed.