15614

AIKEN v. WELCH ET AL.

(28 S. E. (2d), 806)

June, 1943.

*Messrs. Gibson & Gibson,* of Dillon, S. C., *Mr. Neville Bennett* of Clio, S. C., and *Mr. Samuel Want* of Darling-

ton, S. C., Counsel for Appellants-Respondents, 

*Mr. W. Chester Moore,* of Dillon, S. C., Counsel for Respondent-Appellant, 

January 21, 1944.

The Unanimous Opinion of the Court was delivered by CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE:

This action was brought by the plaintiff, Mrs. Hilda R. Aiken, to recover the sum of $4,000.00, and interest from the estate of her former husband, A. B. Welch. The claim was resisted by the administrators on the grounds that the original transaction between the plaintiff and Mr. Welch was a gift, and that even if it amounted to a debt it has been barred by the statute of limitations. It is a law case, but by consent of the parties was tried without a jury. The master took the testimony, and the case was heard by his Honor, Judge E. C. Dennis, who sustained the claim of the plaintiff, and ordered that interest begin to run one year from the date of the death of the intestate. While ordinarily in a law case tried without a jury this Court is bound by the findings of fact of the trial Judge if there was evidence upon which such findings were based, the facts here are not in dispute, the parties differing only upon the legal principles which govern, and especially upon the construction of a writing which is in evidence.

Mrs. Aiken and the intestate, A. B. Welch, were married in 1913, and lived together in the town of Dillon until 1928, when they separated. In 1920, while they were living together, the plaintiff received from the estate of her father a check for about $4,600.00. She endorsed it and turned it over to her husband with the request that he keep the money for her. At this time Mr. Welch was building a handsome residence, which the couple occupied until their separation. From time to time the plaintiff withdrew sums of money from the fund which her husband held for her, to the amount of about $600.00.

In 1929 Mrs. Welch obtained a divorce in the State of Georgia, and afterwards remarried. Soon after the separation she wrote Mr. Welch asking that he pay her the balance of the fund. In reply to this request, on October 27, 1928, he wrote her a letter and separately signed one paragraph of it which reads as follows:

"In regard to the money that you put in our house will say that there was in the neighborhood of four thousand dollars used of yours in our house, the little balance you spent soon after we collected it, so some day you will get your four thousand dollars back. I have not got the money now, nor do I know when I will have it, if times ever get good so that I can sell the house for anything like its value I will do so and will glady refund you the four thousand dollars, or if I should die, you can use this letter in collecting four thousand dollars from my estate, you are entitled to it and I will not keep you from getting it, I am signing this paragraph of this letter so that you may preserve it in case something should happen to me before you are paid."

"Signed: A. B. Welch.

"Dillon, S. C.
"October 27, 1928."

The plaintiff testified that this was the first time she knew that any part of her $4,000.00 had been used in the

construction of the residence. Clearly there was no understanding between them that it would be so used.

> The first issue in the case is: Did the plaintiff give ■ the $4,600.00 to her husband, or was there an obligation on his part to repay her?

We think that the trial Judge correctly held that the transaction did not constitute a gift. At that time Mr. Welch was earning a great deal, and there would seem to be no reason for her to give him this money. Her use of the $600.00 which she withdrew is inconsistent with the claim that she had given him the entire amount of the check. The letter of October, 1928, clearly shows that the original transaction was not a gift. It refers to "your four thousand dollars," and promises to "refund you the four thousand dollars" if the house should be sold, and says "you are entitled to it," and speaks of his death "before you are paid." He takes credit for the $600.00, and states that the balance is $4,000.00. A case similar in some respects is that of *McElveen v. King,* 88 S. C., 346, 70 S. E., 801.

Whether the original transaction was one establishing a trust or whether it created the relationship of debtor and creditor we think is immaterial, since the plaintiff does not sue upon the original obligation, but upon the new promise evidenced by the letter of October 27, 1928. If a trust was originally established, it was not barred by the statute in 1928. For such trust there was substituted the debt evidenced by the letter. The original transaction, regarded as a debt payable upon demand, even if barred by the statute of limitations in 1928, could be revived by a new promise. There was a moral obligation to pay it even though it was not collectible by legal proceedings, and this moral obligation was sufficient consideration for the new promise. *Reigne v. Desportes' Ex'r,* 23 S. C. L., 118, Dud. Law, 118; *Armour Company v. London,* 53 S. C., 539, 546, 31 S. E., 500; 37 C. J., 1099.

The next question is: Has the debt evidenced by this new promise itself become barred by the statute of limitations? That, of course, depends upon what is the maturity date of the obligation. It is our opinion that the Circuit Judge accurately held that the signed paragraph in the letter made the debt payable at such time during Mr. Welch's lifetime as he could sell the house for anything like its value, and that if during his lifetime he was unable to do so, the debt would be payable after his death, from his estate. He definitely promises that "you can use this letter in collecting four thousand dollars from my estate." The testimony tends to show that at no time was Mr. Welch able to sell without very large financial loss the house which had cost approximately $25,000.00. He did not sell it during his lifetime, and it was later sold apparently for about $7,-500.00. The debt, then, did not mature before the death of Mr. Welch, which was September 10, 1940, and so has not been barred by the statute of limitations, as this action was begun in April, 1941. *Price v. Price,* 15 S. C. Eq., 167, Cheves Eq., 167, 34 Am. Dec., 608; *Morrison v. Morrison,* 174 Va., 58, 4 S. E. (2d), 776; 37 C. J., 820; 34 C. J. S., Executors and Administrators, §§ 377, 378, page 125.

There is one other issue between the parties, and it relates to the time when interest on the debt began to run. The plaintiff contends that it should run from the date of the death of Mr. Welch, the defendant administrators maintaining that it should not begin to run until one year after that time. We agree with the Circuit Judge in upholding the viewpoint of the defendants. If a debt is payable "upon the death" of a decedent, interest would accrue from the time of death, even though payment could not be made for one year. Here, however, the debt was to be payable "from my estate," and the administrators could not be required to pay it out of his estate within one year from the date of their qualification. Code, Section 8993. Acts of

1943, page 260. The debt was not legally payable from the estate until the expiration of the administration year.

We think that all of the exceptions should be overruled. The judgment of the Circuit Court is accordingly affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES concur.