16915

THE SOUTH CAROLINA MENTAL HEALTH COMMISSION
v. RUFUS A. MAY

(83 S. E. (2d) 713)

*Messrs. T. C. Callison, Attorney General,* and *James S. Verner, Assistant Attorney General,* of Columbia, *for Appellant,*

*Messrs. Mays, Featherstone & Bradford,* of Greenwood, *for Respondent:*

*Messrs. T. C. Callison, Attorney General,* and *James S. Verner, Assistant Attorney General,* of Columbia, *for Appellant,*

September 30, 1954.

TAYLOR, Justice.

J. Hiram May being mentally ill was admitted to the South Carolina State Hospital on November 14, 1911, and remained there as a patient until his death on July 15, 1952. Rufus A. May was appointed administrator of his estate and the South Carolina Mental Health Commission duly filed a claim amounting to $13,279.58 against such estate for the care and treatment furnished the deceased while a patient in the State Hospital, said claim being for treatment and care from May 2, 1915, he having been a patient continuously during this time. A verified claim for this amount was filed with the administrator and rejected. Defendant in his answer denied liability for any charges except those accruing after the approval of the Mental Health Act on March 7, 1952, 48 St. at Large, p. 2042, and interposed the defenses of waiver and the Statute of Limitations. Thereafter motion was made by Defendant for judgment on the pleadings. Judge Bellinger, then presiding, overruled the defense of waiver and the contention that the new Mental Health Act repealed all prior acts, upholding however, the plea of limitations and both parties now appeal, Plaintiff contending that there was error in upholding the Statute of Limitations and Defendant contending, first, that it was

error to hold that the Mental Health Act of 1952 did not have the effect of rendering invalid all claims or charges which accrued prior to the date of the approval of the Act, March 7, 1952; second, that it was error not to hold that the Board of Regents of the Hospital had waived their rights to assess charges against the Defendant's estate.

The 1915 Act cut off all charges and claims prior to the date of that Act. It clearly sets forth the duties of executors or administrators as to ascertaining from the State Board of Charities whether or not the deceased person was supported while an inmate and if not it provided for the filing of a claim for such amount as might be due. Section 23, Act 100 of 1915, 29 St. at Large, pp. 132, 138, reads as follows:

"Upon the death of a person who is an inmate, or has been an inmate since the passage of this Act, of said institution, and who is possessed of property, it shall be the duty of the executor or administrator to ascertain from the State Board of Charities whether the deceased person was supported while an inmate, and if not, the Board may present a claim for support, or for the balance due in case less than the minimum rate had been paid. Such claim shall be allowed and paid as other lawful claims against the estate: Provided, That the Board may waive the presentation of any claim when, in their judgment, an otherwise dependent person would be directly benefited by the estate. It shall be lawful for the Board to accept from a guardian, committee or trustee of an inmate a contract agreeing to pay to the State from the property of his ward before or after death of his ward a fixed annual amount for the support of such ward while an inmate, and with interest at four per cent. per annum. A copy of such contract shall be filed in the Probate Court of the proper county, and duly entered as a part of the records concerning such ward."

Subsequent acts relating to this subject, however, reveal there is a continuity of provisions that such claims should be kept alive and not cut off as provided in the 1915 Act.

The foregoing as carried in the 1952 Code appears as Section 975, Title 32 and reads as follows:

"Upon the death of a person who is an inmate, or has since February 20, 1915 been an inmate, of the State Hospital and who is possessed of property, the executor or administrator shall ascertain from the Board of Regents of the Hospital whether the deceased person was supported while an inmate and, if not, the Board may present a claim for support or for the balance due in case less the minimum rate had been paid. Such claim shall be allowed and paid as other lawful claims against the estate. But the Board may waive the presentation of any claim when, in its judgment, an otherwise dependent person would be directly benefited by the estate."

Act No. 836 of the 1952 Acts provides in Section 16, Article 4, the following:

"Upon the death of a person who is or has been a patient or trainee of a state mental health facility the executor or administrator and the judge of probate shall notify the commission in writing. If the decedent was cared for at the expense of the state during his confinement, the commission shall present a claim for the amount due and this claim shall be allowed and paid as other lawful claims against the estate. The commission may waive the presentation of any claim where, in its opinion, an otherwise dependent person would be directly benefited by waiver."

In an Act approved by the Governor, March 23, 1954, 48 St. at Large, pp. 1732, 1741, Section 20, we find the following:

"There is hereby created a general lien upon the real and personal property of any person who is receiving or who has received care or treatment in a state mental health facility, to the extent of the total expense to the State in providing the care, training or treatment. The commission shall send to the clerk of court and to the judge of probate of the county of the patient's or trainee's known or last known residence a statement showing the name of the patient or

trainee and the date upon which the lien attaches, which shall be filed in the offices of the clerk of court and the judge of probate in each county in which the patient or trainee then owns or thereafter acquires property, real or personal, and no charge shall be made for this filing. From the time of filing in either office, the statement shall constitute due notice of the lien against all property then owned or thereafter acquired by the patient or trainee. No action to enforce the lien may be brought more than one year after the patient's or trainee's death. This lien shall in no way affect the right of homestead."

Section 24, of the same Act, reads:

"Provided, however, that limitations against claims for charges for care, training, maintenance or treatment heretofore or hereafter received by any patient or trainee from the South Carolina State Hospital, any State Training School, or any State Mental Health Facility, shall commence to run against the State, its boards, commissions or agencies charged with the operation of the above institutions only from the last date upon which care, training, maintenance or treatment was furnished to any such patient or trainee."

The foregoing Acts by using such expressions as "Upon the death of a person who is an inmate, or has since February 20, 1915 been an inmate" and "Upon the death of a person who is or has been a patient or trainee of a state mental health facility" together with an expressed provision that limitations against such claims or charges shall commence to run against the State, its Boards or Commissions or agencies charged with the operation of such institutions only from the last date of such care, training, maintenance or treatment denotes a continuity of thought running throughout such legislation to the idea that such indigent mentally ill are to receive such care upon the condition that they pay for it when and if able. The Act approved by the Governor March 23, 1954, heretofore referred to, came after the entering of judgment in this case

on January 16, 1954, and is referred to only for the purpose of showing the intent of the Legislature running throughout its acts on this subject. Such legislation carries with it the thought of the responsibility of the State to care for its indigent insane with a view to improvement or cure, if possible, and that such treatment be paid for in whole or in part, if possible, by the patient or his or her estate. Conditions of life subject to change as they are, it is hardly reasonable to say that because one is admitted to such institutions as an indigent patient and later becomes one of substance by inheritance or otherwise he or she or the estate, as in this instance, should not be required to compensate the State for the costs of his or her care and treatment. The maintenance and care of one mentally ill is not an unconditional charity but rather based upon the expectation of future reimbursement if the circumstances should thereafter permit.

Prior to the passage of Act 836 of the 1952 Acts, the control of the Hospital was vested in the Board of Regents. Section 2, Article 1, of the 1952 Act, provides for the appointment of the Board of Regents to be known as the South Carolina Mental Health Commission. Section 3 of Article 1 vests this new Commission with all title to the property, real and personal, which theretofore was vested in the old Board of Regents; all contractual rights and duties of the Board of Regents were devolved upon the Commission. Section 9 of that Article continued in existence the South Carolina State Hospital. Section 16, Article 4, provides that upon the death of one who is or has been a patient in a mental health facility, the Commission shall present a claim against the estate. All of which lends strength to the position that it was the intent of the General Assembly that the liability of patients and their estates should continue without interruption, that the 1952 Act did not wipe out all prior claims but that the new Regents or Commissioners absorbed the powers and duties of the old Board of Regents.

The Indiana Supreme Court in a situation analogous to the one at bar stated in *State ex rel. Milligan v. Ritter's Estate,* 221 Ind. 456, 48 N. E. (2d) 993, 998:

"It is true that there is an express repeal of the Act of 1917, but it is equally true that there is no departure from the policy of reimbursement for the care of patients, and no indication of an intention to abolish the state's right of reimbursement. The former statute is substantially reenacted. * * * 'It does not require an express saving clause to prevent the destruction of rights existing under former statutes. If the intention to preserve and continue such right is clearly apparent, it will be carried into effect.' * * * " 'When the Legislature reenacted the same provision, and provided for its taking effect at the same time as the repeal of the old statute, it is clear that they intended to continue such provision in force without interruption.' ' "

See also *Duke Power Co. v. South Carolina Tax Commission,* 4 Cir., 81 F. (2d) 513, 516, *certiorari* denied 298 U. S. 669, 56 S. Ct. 834, 80 L. Ed. 1392, where it stated:

"The general rule, of course, is that the repeal of a statute has the effect of blotting it out as completely as if it had never existed and of putting an end to all proceedings under it. 59 C. J. 1189, 1190, and cases there cited. But it is equally well settled that a repealing act ought not be construed, if any other construction is possible, as intended to affect rights which have vested under the act repealed or as requiring the abatement of actions instituted for the enforcement of such rights."

Also, see *State Hospital at Raleigh v. Security Nat. Bank,* 207 N. C. 697, 178 S. E. 487.

Defendant-Respondent relies strongly upon *Columbia Ry. Gas. & Electric Co. v. Carter,* 127 S. C. 473, 121 S. E. 377, and other cases construing tax statutes; but these cases (a) did not involve repeal and simultaneous reenactment of another statute on the same subject; (b) cases construing tax statutes, in case of doubt, must resolve

the doubt in favor of the taxpayer. In the instant case there was a simultaneous repeal and reenactment and the rule of construction in tax cases is not applicable but the rule that a repealing act should not be considered as putting an end to all proceedings under the prior act if any other construction is possible as to such rights as have vested under the act repealed should be applied. See *Duke Power Co. v. S. C. Tax Commission,* 4 Cir., 81 F. (2d) 513; *State v. Patterson,* 220 S. C. 269, 66 S. E. (2d) 875; 50 Am. Jur., "Statutes," Sec. 533; *State v. Williams,* 117 N. C. 753, 23 S. E. 250; *State v. Ritter's Estate, supra;* also, 82 C. J. S., Statutes, § 295, to the effect that: "The repeal and simultaneous reenactment of substantially the same statutory provision are to be construed, not as an implied repeal of the original statute, but as an affirmance and continuation thereof." And 82 C. J. S., Statutes, § 288, wherein it is stated: "The courts will not adjudge a statute to have been repealed by implication unless a legislative intent to repeal or supersede the statute plainly and clearly appears. The implication must be clear, necessary, irresistible, and free from reasonable doubt." Such test was not met in the instant case and we are of the opinion that the 1952 Act did not have the effect of rendering invalid all claims or charges which accrued prior to the approval of the Act, March 7, 1952.

Since the intent of the Legislature governs in construction of statutes, much of what has been heretofore said is also apropos to the question of whether or not the six year Statute of Limitations as set forth in Title 10, Section 143, Code of Laws for South Carolina for 1952, is applicable in the instant case so as to bar the State from recovering such amounts as were due beyond the six year period. Section 16, Art. 4, of the Act of March 7, 1952, under which this action was brought states: "The commission shall present a claim for the amount due and this claim shall be allowed and paid as other lawful claims against the estate." The Order appealed from held, in effect, that the words "this claim shall be allowed and paid as other lawful

claims against the estate" were to be construed literally and controlled since other lawful claims against the estate were barred beyond the six year period. We are of the opinion, however, that such directive related to procedural matters such as the distribution of assets, etc., and was not intended to make the Statute of Limitations applicable to the facts of the case at bar. The first rule of construction in the interpretation of statutes is that of intention on the part of the Legislature, *State v. Patterson, supra.* The Legislature has repeatedly dealt with problems of this nature and it is explicit that it was their intention that the patient when able should reimburse the State for such care and maintenance. Executors or administrators of the estates of such patients were required to ascertain from the proper authorities whether or not the deceased was supported while an inmate and the claim for such support or the balance due in case less than the minimum rate had been paid was required to be paid and allowed as other claims against the estate.

Limitations statutes are statutes of grace permitting the avoidance and evasion of a liability when pleaded and such a plea becomes an affirmative defense; see *Scovill v. Johnson,* 190 S. C. 475, 3 S. E. (2d) 543. Generally the limitations laws do not apply unless made expressly applicable. See Limitations of Actions, 34 Am. Jur., Section 48. It is, of course, true that limitations in proper cases will run against the State but such provisions must be strictly construed in favor of the State, 53 C. J. S., Limitations of Actions, § 15, p. 943. Keeping in mind that the Legislature did not choose to make the six year statute expressly applicable and the construction of such statutes must be construed strictly in favor of the State, we are of the opinion that it was the intention of the Legislature that such limitations should not apply. It would be a strained construction to say that the Legislature intended to require the executor or administrator of the estate of a former inmate and the Probate Judge to notify the Commission and the Commission to then file a claim for *the amount due upon*

*the death of one who is or has been a patient* and then limit such liability to the six years as provided in what is known as our Statute of Limitations, Sec. 10-143, Art. 3 of the 1952 Code of Laws for South Carolina.

The very nature of the subject presents unusual problems for the consideration of both the Legislature and the Courts as well as those who are the beneficiaries of the State's facilities in such matters. This Court has not heretofore been called upon to pass upon a question of this precise nature but the case of *Aiken v. Welch,* 204 S. C. 180, 28 S. E. (2d) 806, holds that the Statute of Limitations commenced to run from the date of death of one who promised to pay another a sum of money when he was able to do so (when he sold his house) or in case of death his estate would pay it. The Opinion of this Court in *State ex rel. State Highway Department v. Piedmont & Northern Railway Co.,* 186 S. C. 49, 194 S. E. 631, relied on so strongly by Respondent in our opinion is not controlling in matters of this nature but the language of the statute requiring a claim be filed *upon the death* of a person who *is* or *has been* a patient for the *amount due* was intended by the Legislature to cover the period during which such care and treatment was received.

It is contended that the Board of Regents of the South Carolina State Hospital acting within their discretion waived the collection of charges against the Defendant's intestate for his care and treatment. The Order appealed from held that no facts were alleged tending to show any acts on the part of the Plaintiff, its officers or agents from which waiver might reasonably be inferred and we find no error therein.

For the foregoing reasons, we are of the opinion that the Order appealed from should be affirmed in so far as it holds that the 1952 Mental Health Act does not have the effect of rendering invalid all claims or charges which accrued prior to the date of its approval, March 7, 1952, and that there was no waiver on the part of the Board of Regents

of the Hospital; but reversed in so far as it holds that the Statute of Limitations is applicable to the claim for care and services rendered the decedent.

Affirmed in part; reversed in part.

STUKES, OXNER and LEGGE, JJ., and J. FRANK EATMON, Acting Associate Justice, concur.