STATE OF NORTH CAROLINA EX REL BROUGHTON HOSPITAL v. JOHN MORRIS HOLLIFIELD, GUARDIAN OF PAUL CONLEY, INCOMPETENT

No. 6929SC136

(Filed 30 April 1969)

1. Asylums; Insane Persons § 5— action for treatment and maintenance in State hospital

An action under G.S. 143-121 to recover for treatment and maintenance of an incompetent at a State hospital need not be instituted while the patient is receiving such treatment and maintenance but may be brought after the patient has left the State hospital, the State not being relegated after the patient leaves the hospital to an action under G.S. 143-126 against the patient's estate.

2. **Asylums;    Insane Persons § 6—   action for treatment and maintenance in State hospital — retention of funds for support of incompetent**

In an action under G.S. 143-121 to recover for treatment and maintenance of an incompetent at a State hospital, it is not required that sufficient funds be set aside and retained by the incompetent for his future support and maintenance and for that of members of his family who are dependent upon him before the State is entitled to recovery.

APPEAL from *Martin, J. (Harry C.),* September-October Session 1968, McDOWELL County Superior Court.

The State of North Carolina (plaintiff), on behalf of Broughton Hospital (hospital), instituted this civil action against John Morris Hollifield (defendant), the guardian for Paul Conley, an incompetent (incompetent). Plaintiff sought to recover $15,120.99 for the treatment and maintenance of incompetent at hospital for intermittent times from 9 April 1931 to 31 May 1966. An itemized and verified statement, which was attached to the complaint as Exhibit One, showed the periods during which incompetent was supported, maintained and treated at hospital and the monthly charges therefor, which totaled $15,120.99.

Defendant filed an answer setting up the defense that incompetent was transferred on 31 May 1966 from hospital to a licensed private nursing home in McDowell County where he is now a patient and that he is, therefore, no longer a patient or inmate in hospital. Defendant set out that incompetent is 59 years of age; he has a life expectancy of at least sixteen years; and the custodial care, support and maintenance for the remainder of his life will cost at least $2,000 per year. Defendant asserts that the total value of incompetent's estate is not in excess of $15,000.

The action was originally instituted in Wake County Superior Court. However, on defendant's motion to change venue for the convenience of witnesses, the action was moved by mutual agreement to McDowell County Superior Court, where it was tried before a jury.

Judge Martin submitted one issue to the jury. "What amount, if any, is the plaintiff entitled to recover of the defendant?" The jury answered "$5,000.00." However, the verdict was set aside upon plaintiff's motion. Judge Martin then made findings of fact to the effect that the itemized and verified statement (Exhibit One) showed the monthly rate of charge, which was fixed by hospital's board of directors and which covered the period of confinement from 9 April 1931 to 31 May 1966; the total of $15,120.99 was predicated upon this rate of charge; and defendant had offered no evidence to show

any error in the calculation of the amount due, in the period of confinement, or in the crediting of any payments. Judge Martin thereupon entered a judgment in accordance with G.S. 143-118 that plaintiff recover of defendant $15,120.99. Defendant excepted and appealed to this Court.

*Attorney General Robert Morgan by Staff Attorney L. Philip Covington for plaintiff appellee.*

*William C. Chambers for defendant appellant.*

CAMPBELL, J.

[1]     Defendant's first contention is that a State institution, such as hospital, may institute a civil action for treatment and maintenance only during the period of time when the patient is actually receiving such treatment and maintenance. It is argued that once a patient leaves the State institution, the action for treatment and maintenance may be instituted only after the patient's death. In support of this position, defendant relies upon G.S. 143-121, which provides:

> *"Action to recover costs.* — Immediately upon the fixing of the amount of such actual costs, as herein provided, a cause of action shall accrue therefor in favor of the State for the use of the institution in which such patient, pupil or inmate is receiving training, treatment, maintenance or care, and the State for the use of such institution may sue upon such cause of action in the courts of Wake County, or in the courts of the county in which such institution is located, against said patient, pupil or inmate, or his parents, or either of them, or guardian, trustee, committee, or other person legally responsible therefor, or in whose possession and control there may be any funds or property belonging to either the said pupil, patient or inmate, or to any person upon whom the said patient, pupil, or inmate may be legally dependent, including both parents."

Defendant relies specifically upon the words "is receiving" in the above statute. It is his position that, since incompetent is no longer "receiving training, treatment, maintenance or care" from hospital, plaintiff cannot maintain the present action and that, since no civil action was commenced on or before 31 May 1966, plaintiff is relegated to bringing an action under G.S. 143-126, which provides:

> *"Death of inmate; lien on estate.* — (a) In the event of the death of any inmate, pupil or patient of either of said institu-

tions above named, leaving any such cost of care, maintenance, training and treatment unpaid, in whole or in part, then such unpaid cost shall constitute a first lien on all the property, both real and personal, of the said decedent, subject only to the payment of funeral expenses and taxes to the State of North Carolina."

It would be a strained and limited construction of G.S. 143-121 to hold that, once the patient is discharged from a State institution, a civil action for treatment and maintenance may not be instituted until after the patient's death. Such a construction would be improper and manifestly unjust to the State and the taxpayers. G.S. 143-117 through G.S. 143-127 were construed by the Supreme Court in *State Hospital v. Bank*, 207 N.C. 697, 178 S.E. 487, where it was stated:

"There is no provision in the Constitution requiring or authorizing the General Assembly to provide for the care, treatment, or maintenance of nonindigent insane persons at the expense of the State. The General Assembly has at all times by appropriate statutes required such persons to pay at least the actual cost of their care, treatment, and maintenance, while they are patients in State institutions."

The first contention is without merit.

[2] Defendant's second contention is that, before plaintiff is entitled to recover for the treatment and maintenance of incompetent, sufficient funds must be set aside and retained by defendant for "adequate future support and maintenance of (incompetent) and the members of his family, if any, who are dependent upon him". Defendant relies upon the doctrine enunciated in *Read v. Turner*, 200 N.C. 773, 158 S.E. 475, where the Supreme Court held that creditors could not reach the assets of an incompetent person until adequate provision was made for the support and maintenance of the incompetent and dependent members of his family and that, after adequate provision was made, creditors could then reach only the excess. However, this doctrine is not applicable in the instant case because the Legislature has specifically provided for the payment of treatment and maintenance in State institutions from those persons who are not indigents.

The second contention is without merit.

The judgment of the superior court is

Affirmed.

BROCK and MORRIS, JJ., concur.