STATE OF NORTH CAROLINA EX REL. DOROTHEA DIX HOSPITAL v. EARL WILLIAM DAVIS AND LEONARD MASSEY, GUARDIAN OF EARL WILLIAM DAVIS

No. 7510SC425

(Filed 19 November 1975)

1. Insane Persons § 5— mental patients — payment of costs of care — applicability to criminally insane

Statutes requiring persons admitted to State mental institutions to pay the actual costs of their care, treatment, and maintenance at such institutions, G.S. Ch. 143, Art. 7, apply to mentally ill criminals committed pursuant to G.S. Ch. 122, Art. 11.

2. **Insane Persons § 5— mental patients — payment of costs of care — due process**

Statutes requiring mental patients to pay the actual costs of their care in State institutions do not give the hospital governing boards unbridled authority to determine the amount and under what circumstances patients shall pay or deny patients notice, hearing and appeal in violation of due process since it is the policy of the State that all patients pay the actual costs of their care and the governing boards are given authority only to determine the actual costs, and patients have the opportunity to resist all claims by the State in actions to recover such costs brought by the State under G.S. 143-121 in the Superior Court of Wake County.

3. **Constitutional Law § 7; Insane Persons § 5— determination of costs to mental patients — no delegation of legislative power**

The statute authorizing the governing boards of State mental institutions to determine the actual costs of the care, treatment and maintenance to be paid by patients at such institutions, G.S. 143-118, does not constitute an impermissible delegation of legislative power in violation of Art. 2, § 1, of the N. C. Constitution.

4. **Insane Persons § 5; Taxation § 2— payment of costs by criminally insane — no tax**

Statutes requiring patients at State mental institutions to pay the actual costs of their care, treatment and maintenance at such institutions do not impose a nonuniform tax in violation of Art. I, § 8 of the U. S. Constitution or Art. V, §§ 1 and 2 of the N. C. Constitution when applied to mentally ill criminals.

APPEAL by plaintiff from *Godwin, Judge.* Judgment entered 30 December 1974 in Superior Court, WAKE County. Heard in the Court of Appeals 16 September 1975.

Action was instituted by plaintiff to recover the actual cost of services provided to the defendant while he was a patient at Dorothea Dix Hospital. Defendant answered plaintiff's complaint asserting that he was committed pursuant to G.S. Chapter 122, Article 11 as a mentally ill criminal and that his commitment was against his will and for the purpose of protecting the general public. Defendant further asserted the unconstitutionality of G.S. Chapter 143, particularly Article 7, and moved for summary judgment.

The court granted defendant's motion for summary judgment and held G.S. Chapter 143, Article 7 unconstitutional as a violation of the Fourteenth Amendment and Article 1, Section 8 of the United States Constitution, and Article 1, Section 19; Article 2, Section 1; and Article 5, Sections 1 and 2 of the North Carolina Constitution. From the foregoing judgment, plaintiff appealed to this Court.

*Attorney General Edmisten, by Assistant Attorney General Parks H. Icenhour, for the State.*

*Joseph B. Huff for defendant appellee.*

ARNOLD, Judge.

Plaintiff's appeal presents two questions for this Court to decide. First, does G.S. Chapter 143, Article 7 apply to persons committed as criminally ill (pursuant to G.S. Chapter 122, Article 11), and second, if the statute is applicable, is it constitutional. We answer both questions affirmatively.

[1] Since there is no statutory authority specifically directing patients under criminal commitment to pay for their hospitalization it is defendant's position that he is not required to pay. He correctly points out that there is no reference in G.S. Chapter 122, Article 11 to payment by the criminally insane. Furthermore, defendant argues that the directive in G.S. 143-119 authorizing the removal of all inmates who refuse to pay is evidence that G.S. Chapter 143, Article 7 does not apply, because the criminally insane could not be removed regardless of whether they refused to pay.

Defendant misconstrues the implications of G.S. 143-119. The statute provides:

" . . . all of the other provisions of this Article relating to the manner in which said board shall collect said costs, shall be construed to be *directory provisions* on the part of the authorities of said institutions and not mandatory, and the failure on the part of said authorities of such institutions to perform any or all of said provisions shall not affect the right of the State institutions so named to recover in any action brought for that purpose, either during the lifetime of said inmates or after their death, in an action against their guardian if alive, or other fiduciary, or against the inmate himself, and if dead, against their personal representatives for the cost of their care, maintenance and treatment in said institutions."

It is clear from a complete reading of the statute that dismissal from an institution for failure to pay is only one of the options created by the statute to enforce payment as equitably as possible.

G.S. 143-117 clearly states: "All persons admitted to Dorothea Dix Hospital . . . are hereby required to pay the actual cost of their care, treatment, training, and maintenance." The message of the statute is unambiguous. There is no indication whatsoever of an intent by the legislature to limit the statute's application to the civilly committed. Absent any indication of a legislative intent to limit the statute's application, it should be strictly construed.

Though there are no North Carolina cases dispositive of the precise issues involved here, North Carolina courts have repeatedly upheld the constitutionality of the principle freeing the State from bearing the expense of care, treatment, and maintenance for non-indigent patients in tax supported State institutions. *State Hospital v. Bank,* 207 N.C. 697, 178 S.E. 487 (1935); *Graham v. Insurance Co.,* 274 N.C. 115, 161 S.E. 2d 485 (1968); *Hospital v. Hollifield,* 4 N.C. App. 453, 167 S.E. 2d 45 (1969).

"There is no provision in the [N.C.] Constitution requiring or authorizing the General Assembly to provide for the care, treatment, or maintenance of nonindigent insane persons at the expense of the State. The General Assembly has at all times by appropriate statutes required such persons to pay at least the actual cost of their care, treatment, and maintenance, while they are patients in State institutions." *State Hospital v. Bank supra* at 704.

The defendant, in the instant case, was charged with the first-degree murder of his wife. By order of the judge of the Madison County Superior Court, the defendant was admitted to Dix Hospital January 13, 1967 under the provisions of G.S. 122-91. Defendant remained incompetent to stand trial until 21 October 1971. After trial, the jury returned a verdict for the defendant of not guilty by reason of insanity.

The State contends that charging defendant for the costs of his care, treatment, and maintenance while he is involuntarily criminally committed is not a tax, and is not violative of his Federal and State constitutional rights. We agree.

[2] In his argument defendant maintains that G.S. Chapter 143, Article 7 violates the due process clause of the Fourteenth Amendment of the U. S. Constitution and Article 1, § 19 of the N. C. Constitution. Defendant argues that (a) the hospital governing board has the unbridled authority to determine what

amount defendant shall pay and under what circumstances; and (b) that the defendant is not entitled to hearing, to notice, to an opportunity to be heard, to be represented by counsel, nor to appeal the board's ruling. These contentions are completely invalid. It is not required that defendant be given notice, a hearing, and a right to counsel before the governing board of the hospital. G.S. 143-121 establishes the cause of action ·by which the State brings this action. Before the plaintiff can recover anything the defendant has ample opportunity, following due notice, in the Superior Court of Wake County to resist all claims by the State. All due process, including a jury trial, is available to defendant.

There is no unbridled authority on behalf of the hospital to determine what amount is paid and under what circumstances. The governing board of plaintiff hospital is empowered to determine and fix the actual cost of care and maintenance for each respective inmate or patient. The policy stated by the General Assembly is that all persons admitted to State hospitals must pay the actual cost of their care, treatment and maintenance. (G.S. 143-117 & 118).

[3]  Article II, Section 1 of the North Carolina Constitution provides, "The legislative powers of the State shall be vested in the General Assembly. . . . " The General Assembly may not abdicate or delegate its authority to make law to departments of government or administrative agencies. However, where the legislature has declared the policy to be ·effectuated, established a framework of law within which the legislative goals are to be accomplished, and created standards for the guidance of the administrative agency, it may delegate to such agency the authority to make determinations of fact upon which the operation of the statute ·is made to depend. *Foster v. Medical Care Comm.,* 283 N.C. 110, 195 S.E. 2d 517 (1973); *Coastal Highway v. Turnpike Authority,* 237 N.C. 52, 74 S.E. 2d 310 (1953).

G.S. Chapter 143, Article 7 sets forth adequate standards from which the various boards of trustees or directors of· the institutions can ascertain the charges against a patient. G.S. Chapter 143, Article 7 is not an impermissible delegation of power to the hospital board.

[4]  Defendant also maintains that the determination of the amount of actual costs of care, treatment and maintenance to be charged a patient constitutes a tax in violation of Article

I, § 8 of the U. S. Constitution and Article V, §§ 1 and 2 of the N. C. Constitution. The Federal and North Carolina Constitutions require that all taxation be uniform and that any classifications, imposition of different rates, or imposition of different modes of assessment be reasonable and not arbitrary. Defendant argues that he was committed to Dix Hospital primarily for the benefit and protection of society generally, and that he is now forced to pay an additional tax.

Defendant reasons that he should no more be required to pay for his maintenance than a prison inmate, and that the legislature has imposed a nonuniform tax by arbitrarily singling out only dangerous hospital inmates to pay the costs as contrasted to all individuals confined for the protection of the public.

We see no distinction between persons civilly committed and those such as defendant who are found not guilty by reason of insanity and committed. All are patients of the hospital. All are under the custody, control and treatment of the Department of Human Resources. The statutory cost of the care, treatment and maintenance is placed on all patients, and therefore does not impose a nonuniform tax. Moreover, this statutory cost charged is not characteristic of a tax at all. It is compensation for services rendered the respective inmates or patients by the hospital.

The defendant in the instant case stood trial for a crime. However, the jury found him not guilty by reason of insanity. A verdict of not guilty by reason of insanity constitutes a full acquittal, and the purpose for commitment of a person acquitted of a crime because of insanity is not as punishment for the crime. *In re Tew,* 280 N.C. 612, 187 S.E. 2d 13 (1972). Though one of the purposes for committing the criminally insane is for the protection of society, the incidents of defendant's hospitalization make it evident that his commitment was not imposed as a criminal sanction. Defendant's commitment was for insanity. Unlike penal incarceration, upon defendant's rehabilitation (i.e., returning to sanity) he may be released from the commitment.

The defendant received actual services (i.e., care, treatment and maintenance) while in Dix Hospital. It is not a violation of defendant's constitutional rights to require him to pay for the services he received and from which he benefitted if he

has the ability to pay. Payment by defendant of the costs for his care, treatment and maintenance is payment for services received by him, and not, as defendant argues, a taking of private property without just compensation. See 20 A.L.R. 3d. 363, Insane Persons-Support, § 10.

G.S. Chapter 143, Article 7 is constitutional, and applicable to the criminally insane. The judgment below is

Reversed.

Judges MORRIS and HEDRICK concur.